**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 94-40412

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JUNIOUS LOUIS VITAL,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Eastern District of Texas

(October 19, 1995)

Before GARWOOD, DUHÉ, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Convicted on a guilty plea of possession with intent to distribute 27.7 grams of cocaine and sentenced to 78 months imprisonment, Junious Louis Vital appeals his sentence. Finding no error, we affirm.

FACTS

On January 30, 1991, an undercover police officer negotiated with Junious Louis Vital ("Vital") for the sale of one ounce of cocaine. Vital instructed the officer to meet him at an apartment in Beaumont, Texas. While at the apartment, Vital showed the

officer five individual plastic bags containing cocaine. The police officer purchased one of the bags, containing 27.7 grams of cocaine, for $1200.

On February 7, 1991, the undercover officer again contacted Vital and set up another transaction for the following day. On February 8, 1991, the officer purchased 28 grams of cocaine from Vital, again for $1200.

On February 22, 1991, in a transaction wholly unrelated to the investigation of Vital, police arrested Joseph Anthony August ("August") for aggravated possession of a controlled substance. While being questioned, August admitted to law enforcement officers that he transported cocaine for Vital. August also admitted that he had been working for Vital since January 1991. August told the officers that during the time he had worked for Vital he had traveled to Houston two or three times a week to purchase two to four ounces of cocaine for Vital. He also informed the officers that the money to purchase the cocaine was provided by Vital and that Vital made all the arrangements for each transaction.

On June 5, 1992, law enforcement officers received information from a confidential informant that Vital was trafficking cocaine and living at a residence in Beaumont, Texas. Based upon this information, the officers obtained a search warrant for the residence and executed it the same day. Vital was not present when the search was conducted. The search of the residence revealed 65.25 grams of cocaine and six firearms. Vital was apprehended later that day after attempting to flee from the police. While

2

attempting to flee, he discarded a small purse which the officers later recovered. Inside the purse were 2.97 grams of cocaine base. Vital was subsequently interviewed by FBI agents and admitted to trafficking cocaine for approximately three years.

PROCEEDINGS BELOW

Vital was the sole defendant named in a three-count indictment filed in the Eastern District of Texas. Count I of the indictment charged Vital with possession with the intent to distribute cocaine on January 30, 1991.[1] Counts II and III also charged Vital with possession with the intent to distribute cocaine on February 8, 1991, and June 5, 1992, respectively.

On January 24, 1994, Vital appeared with counsel in district court, and pursuant to a written plea agreement, pleaded guilty to Count I of the three-count indictment. Counts II and III were subsequently dismissed.

A presentence investigation report ("PSR") was prepared, and Vital filed written objections to some of its factual allegations. First, Vital challenged a firearms enhancement under U.S.S.G. § 2D1.1 (b)(1) on the grounds that there was no evidence that Vital owned or possessed the firearms discovered during the search of his residence. Second, Vital objected to the determination of the quantity of cocaine attributed to him. And finally, Vital objected to the conclusion that he was not entitled to a credit for acceptance of responsibility under U.S.S.G. § 3E1.1.

At Vital's sentencing hearing, the district judge overruled

---

[1]*See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C).

all objections and adopted the PSR. By adopting the recommendations in the PSR, the court found that Vital was responsible for 405.45 grams of cocaine and 2.97 grams of cocaine base, resulting in a base offense level of 26.[2] A two point enhancement was assessed for possession of firearms.[3] The total base offense level for Vital was 28, with a criminal history category of I, resulting in a sentencing range from 78-97 months.[4] The court found that Vital was not eligible for a decrease in the offense level for acceptance of responsibility and sentenced him to 78 months imprisonment, three years supervised release, and waived the $50.00 special assessment. Vital appeals the imposition of this sentence. Vital argues that the district court erred in its application of the sentencing guidelines and that the district court's factual determinations for sentencing purposes were clearly erroneous. We address each of these points below.

ANALYSIS

This court will uphold a sentence imposed under the sentencing guidelines unless such sentence is imposed in violation of law, results from an incorrect application of the guidelines, or is an unreasonable departure from the applicable guideline range. *United States v. Buenrostro*, 868 F.2d 135, 139 (5th Cir. 1989), *cert. denied*, 495 U.S. 923 (1990).

---

[2]*See* U.S.S.G. § 2D1.1(c)(11).

[3]*See* U.S.S.G. § 2D1.1(b)(1).

[4]*See* U.S.S.G. Chapter 5, Part A.

4

"RELEVANT CONDUCT" AND U.S.S.G § 1B1.3

It is well established that a defendant's base offense level for the offense of conviction must be determined on the basis of all "relevant conduct" as defined in U.S.S.G. § 1B1.3. *United States v. Wittie*, 25 F.3d 250, 260 (5th Cir. 1994), *aff'd*, --- U.S. ---, 115 S. Ct. 2199, 132 L. Ed. 2d 351 (1995). We must determine whether conduct occurring after the offense of conviction was properly considered as "relevant conduct" for purposes of calculating Vital's sentence.

In calculating Vital's base offense level for the offense of conviction under Count I of the indictment, the district court considered as relevant conduct: (1) Vital's sale of 27.7 grams of cocaine to an undercover officer on January 30, 1991 (Count I); (2) Vital's sale of 28 grams of cocaine powder to the same undercover officer on February 8, 1991 (Count II); (3) the purchases of 340.2 grams[5] of cocaine powder made by August on Vital's behalf; and (4) Vital's possession -- on his person and in his home -- of 65.25 grams of cocaine powder, 2.97 grams of cocaine base and six firearms on June 5, 1992 (Count III).

In *United States v. Byrd*, 898 F.2d 450 (5th Cir. 1990), the defendant-appellant argued that conduct charged in dismissed counts of an indictment should not be considered as relevant conduct for sentencing purposes. In that case, the appellant was charged with

---

[5]Based upon the information provided by August, the district court, relying upon the PSR, determined that Vital was responsible for two deliveries per week of two ounces per transaction for three weeks, which equals 340.2 grams of cocaine powder.

distribution of cocaine base on August 5, 1988, and with the sale of cocaine base on August 30, 1988. Although the appellant in that case was convicted only of the August 5th distribution, the presentence report included the August 30th sale as relevant conduct and the base offense level was calculated accordingly. This court clarified that, in drug distribution cases, quantities of drugs not specified in the count of conviction are to be included in computing the base offense level "if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *Id.* at 452.

The decision in *Byrd* comported with this court's prior determination that counts to which the defendant does not plead guilty may be considered as relevant conduct in sentencing. *See United States v. Taplette*, 872 F.2d 101, 106 (5th Cir.) (counts to which defendant did not plead were relevant since the sales occurred within a three week period and were all made to the same government informant), *cert. denied*, 493 U.S. 841, 110 S. Ct. 128, 107 L. Ed. 2d 88 (1989); *United States v. Young*, 981 F.2d 180, 189 (5th Cir. 1992)(quantity of methamphetamine for which co-defendant was charged was attributable as relevant conduct to defendant charged with separate offense of possession of amphetamine as part of the same course of conduct, common scheme or plan), *cert. denied*, --- U.S. ---, 113 S. Ct. 2454, 124 L. Ed. 2d 670 (1993). This court has made it clear that there is no separate statute of limitations beyond which relevant conduct becomes irrelevant. *United States v. Moore*, 927 F.2d 825, 828 (5th Cir.), *cert. denied*,

6

502 U.S. 871, 112 S. Ct. 205, 116 L. Ed. 2d 164 (1991).

It is clear that district courts are permitted to consider unadjudicated offenses which occur after the offense of conviction for sentencing purposes, but only if they are "relevant conduct" under U.S.S.G. § 1B1.3. In order for the unadjudicated offenses in the instant case to rise to the level of "relevant conduct", they had to be "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. §1B1.3(a)(2). Although there was no express finding by the district court that the unadjudicated offenses were part of a common scheme or plan, this finding is implicit in the trial court's express determination that the unadjudicated offenses did in fact constitute "relevant conduct" for sentencing purposes.

A finding by a district court that conduct is part of a common scheme is a factual determination subject to review under the clearly erroneous standard. *United States v. Lokey*, 945 F.2d 825, 839-40 (5th Cir. 1991). Although the district court's implicit finding of a common scheme or coherent course of conduct in the instant case might otherwise be subject to review for clear error, Vital failed to object to the district court's consideration of the unadjudicated offenses during sentencing. Therefore, the district court's consideration of these episodes of conduct is reviewable only for plain error.

Pursuant to Fed. R. Crim. P. 52(b), this court may correct forfeited legal errors, or unobjected-to errors, only when there is a demonstration of the following: (1) there must be an error; (2)

7

the error must be clear, obvious or readily apparent; and (3) this obvious legal error must affect substantial rights. *United States v. Calverley*, 37 F.3d 160, 162-164 (5th Cir. 1994) (en banc) (citing *United States v. Olano*, --- U.S. ---, 113 S. Ct. 1770, 1776-79, 123 L. Ed. 2d 508 (1993)), *cert. denied*, --- U.S. ---, 115 S. Ct. 1441, 131 L. Ed. 2d 320 (1995). Upon a finding that these requisites of plain error have been met, this court is empowered, in its sound discretion, to correct the assigned error. However, plain errors affecting substantial rights "should be corrected on appeal only if they 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 164 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S. Ct. 391, 392, 80 L. Ed. 555 (1936)). "[I]n most cases it means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." *Olano*, 113 S. Ct. at 1778. Furthermore, "Rule 52(b) is permissive, not mandatory. If the forfeited error is 'plain' and 'affect[s] substantial rights,' the Court of Appeals has authority to order correction, but is not required to do so." *Id.* (quoting Fed. R. Crim. P. 52(b)).

The narrow discretion of this court to correct plain error pursuant to Rule 52(b) is even further pared in the present instance: "'[Q]uestions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error.'" *United States v. McCaskey*, 9 F.3d 368, 376 (5th Cir. 1993)(quoting *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir.), *cert. denied*, --- U.S. ---, 111 S. Ct. 2023, 114 L. Ed.

2d 117 (1991)).

At sentencing, Vital did not object to those portions of the PSR that expressly referred to his unadjudicated conduct described in the dismissed counts of the indictment. If Vital had objected to the district court's consideration of these unadjudicated offenses as relevant conduct, then the district court could have resolved this question of fact at sentencing. In the absence of any such objection, however, the district court adopted the recommendations set forward in the PSR. Therefore, following this court's opinion in *McCaskey, supra*, the district court did not commit plain error when it considered the conduct described in the dismissed counts of the indictment as being part of a common scheme for sentencing purposes.

SENTENCE ENHANCEMENT FOR FIREARMS POSSESSION

The decision by the district court to enhance Vital's sentence for possession of firearms pursuant to U.S.S.G. § 2D1.1(b)(1) was a factual determination. Therefore, this court reviews this determination for clear error. *United States v. Eastland*, 989 F.2d 760, 769 (5th Cir.), *cert. denied*, --- U.S.---, 114 S. Ct. 246, 126 L. Ed. 2d 200 (1993).

A sentencing court should increase a defendant's base offense level by two points in situations involving possession of a dangerous weapon "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). This court has held that this adjustment is not limited to those scenarios in which the defendant

9

possesses a dangerous weapon during the offense of conviction; the adjustment is also to be made when the defendant possesses a dangerous weapon during the course of related relevant conduct. *United States v. Vaquero*, 997 F.2d 78, 85 (5th Cir.), *cert. denied*, --- U.S. ---, 114 S. Ct. 614, 126 L. Ed. 2d 578 (1993). As previously discussed, Vital's arrest on June 5, 1992, and the circumstances surrounding that arrest, were relevant conduct for sentencing purposes. Therefore, the issue before this court is whether the district court was correct when it found that Vital possessed the firearms found in his home on that date.

At sentencing, Vital objected to the firearms enhancement on the basis that there was no evidence that he owned or possessed a firearm. However, Vital's admissions in the PSR do not support this contention. In the PSR Vital admitted that the firearms seized on June 5, 1992, belonged to his girlfriend and that he was aware that she kept firearms in his home.

This court has determined that access to, and not ownership of, the dangerous weapon must be established; even if the defendant did not intend to use the weapon, it suffices that the weapon could have been used. *United States v. Menesses*, 962 F.2d 420, 429 (5th Cir. 1992). In light of this court's opinion in *Menesses,* the admissions by Vital are sufficient to support the district court's enhancement of the base offense level. Therefore, the district court's enhancement of Vital's base offense level for possession of a dangerous weapon was not clearly erroneous.

10

AMOUNT OF DRUGS ATTRIBUTABLE TO VITAL

Relying on the testimony of August, the U.S. probation officer who prepared the PSR imputed an additional 340.2 grams of cocaine powder to Vital for sentencing purposes.[6]  The district court then used this finding to enhance Vital's base offense level by an additional two points.  Vital objected at the sentencing hearing, arguing that August's testimony was hearsay on hearsay, made under duress, and with the hope or expectation of consideration for his testimony.

This court is to uphold the district court's factual findings regarding the quantity of drugs attributable to the defendant for sentencing purposes unless such findings are clearly erroneous. *United States v. Robins*, 978 F.2d 881, 889 (5th Cir. 1992).  In determining the relevant facts at sentencing, the district court is not restricted to information that would be admissible at trial.  The district court may consider any information which has "sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3, comment.; *see also*, *United States v. Manthei*, 913 F.2d 1130, 1138 (5th Cir. 1990).  A presentence report is considered reliable and may be considered as evidence by the trial judge in making sentencing determinations. *United States v. Lghodaro*, 967 F.2d 1028, 1030 (5th Cir. 1992) (citing *United States v. Sanders*, 942 F.2d 894, 897-898 (5th Cir. 1991)).  Furthermore, if no relevant affidavits or other evidence is submitted to rebut the information contained in the PSR, the court is free to adopt

---

[6]*Supra* note 5.

its findings without further inquiry or explanation. *United States v. Mir*, 919 F.2d 940, 943 (5th Cir.), *cert. denied*, --- U.S. ---, 113 S. Ct. 105, 121 L. Ed. 2d 64 (1990). Vital failed to present any evidence to support his objection to the court's reliance on the information set forward in the PSR pertaining to August's testimony. Consequently, the district court's reliance on the PSR was not clearly erroneous.

ACCEPTANCE OF RESPONSIBILITY

At sentencing, Vital argued that his plea of guilty and his admission of conduct comprising the offense of conviction demonstrated his acceptance of responsibility for his offense. Vital also protested the probation officer's unfavorable recommendations based on Vital's inability to recall the details of the offense. This court has not definitively determined the standard for reviewing a district court's refusal to credit a defendant's purported acceptance of responsibility. The court has applied, on separate occasions, the clearly erroneous standard, the "without foundation" standard, and the "great deference" standard when conducting such a review. *United States v. Thomas*, 12 F.3d 1350, 1372 & n.39 (5th Cir.), *cert. denied*, --- U.S. ---, 114 S. Ct. 1861, 128 L. Ed. 2d 483, *and cert. denied*, --- U.S. ---, 114 S. Ct. 2119, 128 L. Ed. 2d 676 (1994). In *Thomas*, this court determined that, "for the purpose of this appeal, there appears to be no practical difference between the three standards." *Id.*

The sentencing guidelines shed considerable light on the deference which a reviewing court must afford the sentencing court

12

in this context: "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n.5). Furthermore, "a defendant who enters a plea of guilty is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1 comment., (n.3). Finally, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1, comment. (n.1(a)). In light of this commentary, we hold that the correct standard of review to apply to a district court's refusal to credit a defendant's acceptance of responsibility is the "great deference" standard.

The district court responded to Vital's objections at sentencing, observing that Vital's three positive tests for cocaine metabolite since his arrest undercut his acceptance of responsibility. In addition, the district court noted that Vital, at the time of sentencing, continued to deny several factual elements of the offense, maintaining that (1) he never sold cocaine for $1,200 an ounce, (2) he was never in possession of crack cocaine, and (3) he never visited or lived in the Florida Street Apartments, the scene of the offense of conviction. During Vital's interview prior to sentencing, he stated that he could not recall "any of the specific incidents detailed in the offense reports provided by law enforcement," and denied that he told anyone that

13

others were selling cocaine for him or that he purchased the cocaine from a source in Houston.

Based on this evidence, the district court found that Vital had denied facts bearing on the offense of conviction and on relevant conduct. Granting great deference to these findings, we hold that the trial court did not err when it refused to reduce Vital's sentence for acceptance of responsibility.

BURDEN OF PROOF REQUIRED TO SUPPORT FACTUAL FINDINGS

Vital argues that the district court's factual determinations relating to the testimony of August should have been based upon clear and convincing evidence because this testimony had the effect of dramatically increasing Vital's sentence. Vital urges that the district court should have departed from the established burden of proof of "preponderance of the evidence" and used a higher standard for making its factual determinations in the instant case. *See United States v. Mitchell*, 31 F.3d 271, 277 (5th Cir.) (factual findings must be established by a preponderance of the evidence), *cert. denied*, --- U.S. ---, 115 S. Ct. 455, 130 L. Ed. 2d 363 (1994).

In support of this argument, Vital relies primarily on *United States v. Kikumura*, 918 F.2d 1084 (3d Cir. 1990). In *Kikumura*, the Third Circuit held that the district court should have based its factual determinations upon "clear and convincing" evidence in a situation where the sentence was increased from thirty months to thirty years, a 22-level increase in the offense level, where the increase was based, in part, upon hearsay testimony. *Id.* at 1100-

14

02.

Vital contends that, as a direct consequence of the district court's consideration of August's testimony, Vital was sentenced to 78 months instead of 63 months. Vital contends that August's testimony therefore resulted in a dramatic increase of his sentence -- an increase of over 23%. If we assume, *arguendo*, that Vital is accurate in his contention that the district court's consideration of August's testimony did result in a 23% increase in his sentence, this still does not constitute a departure from the guidelines of such magnitude that would require the imposition of a higher burden of proof. *See United States v. Carreon*, 11 F.3d 1225, 1240 (5th Cir. 1994) (where sentence was enhanced from roughly six years to twenty years, the application of a higher burden of proof to the evidence used for enhancement purposes was not warranted).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

15