**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 94-20914**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**


**VERSUS**


**EDID PATINO-CARDENAS,**

**Defendant-Appellant.**



_____

Appeal from the United States District Court
for the Southern District of Texas

_____


June 10, 1996


Before POLITZ, Chief Judge, EMILIO M. GARZA and DeMOSS, Circuit
Judges.

DeMOSS, Circuit Judge:

Edid Patino-Cardenas (Patino) pleaded guilty in federal
district court to transporting an alien within the United States,
in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).  He appeals his
sentence only, challenging: (1) the district court's failure to
adjust downward two-points for acceptance of responsibility, and
(2) the district court's two-point enhancement based on Patino's
role in the offense.  We affirm in part, reverse in part, and
remand for resentencing.

**FACTS**

On July 18, 1994, Arkansas-based INS agent John Stansel received a call from a confidential informant (CI) who informed him that ten illegal aliens, including the CI's brother Cesar, had been smuggled to Houston. The smuggler wanted $700 to release Cesar. Agent Stansel gave the CI an undercover telephone number to pass along to Cesar.

Three days later, Roberto Valtierra-Acevedo (Valtierra-Acevedo) called Agent Stansel at the undercover number and asked to speak with the CI. Agent Stansel responded that the CI was out of town and asked Valtierra-Acevedo to take Cesar to Little Rock, Arkansas. Valtierra-Acevedo refused to deliver Cesar to Arkansas, requested $700 for Cesar's release, and left his Houston telephone number with Stansel.

Stansel passed the information on to the INS in Houston. Thereafter, INS Agent Balentin[1] called Valtierra-Acevedo's Houston number, claiming to be the CI's friend. Patino answered the telephone and told Balentin that he was the person Balentin needed to speak with about Cesar's release. Patino instructed Balentin to go to a designated gas station and then to call back. Patino also told Balentin that two other aliens were being held.

When Balentin called from a location near the gas station, Patino instructed Balentin to meet him in front of a department store at that location. Patino stated he would arrive in a red

---

[1] The PSR refers to Agent "Valentin." The record clarifies that the Agent's correct name is "Balentin."

truck with Mexican plates. Shortly thereafter, Patino, co-defendant Eriban Cardenas-Aguirre (Cardenas-Aguirre), and Cesar arrived in a red truck. Patino got out, introduced himself (using an alias) and pointed to Cesar, who was still seated in the truck with Carednas-Aguirre. Carednas-Aguirre got out of the truck and was introduced as a friend of Patino's. After Balentin gave the prearranged signal, all three men were arrested.

INS officers then proceeded to a Houston residence (the Leedale house) where Patino's sister, co-defendant Hermelinda Patino-Cardenas, answered the door and consented to a search of the house. Although she claimed that there were no aliens in the house, INS agents discovered two aliens hiding in one of the rooms and took those individuals into custody. The next day Hermelinda Patino-Cardenas and Roberto Valtierra-Acevedo were also arrested.

INS interviews with the three smuggled aliens revealed that they, along with several other aliens, paid "recruiters" in Neuvo Laredo, who put them in contact with a smuggler. The smuggler arranged their crossing of the Rio Grande River into Laredo, Texas. Next the aliens rode in a blue pickup for about an hour, followed by a long walk through brush, followed by another two hour ride in the same blue pickup. Along Highway 59 heading east, the blue pickup stopped and two of the aliens (but not Cesar) were transferred to Patino's red pickup. All three aliens identified Patino as the man who drove the red pickup. Both trucks then drove to the Leedale house in Houston.

3

The next day, the aliens witnessed Patino receiving a large sum of money for the release of five of the aliens in their group. Patino told the remaining aliens that they would be returned to Mexico if they could not pay $500 each for their release. All three aliens claimed that both Patino and Robert attempted to contact people to arrange for the aliens' release. One of the aliens stated that seven other aliens smuggled in their group had been "paid for and delivered" before the INS arrived.

**PROCEDURAL HISTORY**

Patino was charged in count 1 of a four count indictment with transporting aliens within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).[2] Patino pleaded guilty without the benefit of a plea bargain on September 19, 1994.

A presentence Investigation report (PSR) was filed, and Patino filed timely objections based on the PSR's failure to adjust downward two levels for acceptance of responsibility, and to a two level increase for Patino's role in the offense. The probation department then filed an addendum to the PSR, stating that Patino had not admitted all of the conduct comprising the offense charged in count 1.

When Patino appeared for sentencing, the district court judge overruled Patino's objections and imposed a sentence in accordance with the PSR, which recommended an adjusted offense level of 13 and

---

[2] Cardenas-Aguirre, who went with Patino to deliver Cesar, was also charged in count 1. Counts 2, 3 and 4 charged Roberto Valtierra-Acevedo and Hermelinda Patino-Cardenas with violations of 8 U.S.C. § 1324(a)(1)(c) for harboring the three aliens at the Leedale house.

4

a criminal history category of IV. Accordingly, Patino was sentenced to 27 months incarceration and a $2500 fine, to be followed by a term of three years supervised release. This appeal followed.

## ACCEPTANCE OF RESPONSIBILITY

Patino argues that the district court erred by denying him a two-level downward adjustment for acceptance of responsibility because he pleaded guilty and admitted all of the conduct comprising the offense charged. Patino is not entitled to a downward adjustment simply because he pleaded guilty. U.S.S.G. § 3E1.1 (1994). Patino's entitlement to an adjustment for acceptance of responsibility depends upon whether he effectively (1) admitted the conduct comprising the offense of conviction and (2) admitted or did not falsely deny additional relevant conduct, for which he was accountable. United States v. Vital, 68 F.3d 114, 120 (5th Cir. 1995), cert. denied, 114 S. Ct. 2151 (1994); United States v. Smith, 13 F.3d 860, 866 (5th Cir. 1994); see also U.S.S.G. § 3E1.1, comment. n.1(a) (1994); § 1B1.7 (1994) (failure to follow guideline commentary can constitute an incorrect application of the guidelines requiring reversal on appeal). Patino was not required to volunteer or affirmatively admit relevant conduct beyond the conviction offense. A defendant can "remain silent with respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction." Id. Patino could not, however, falsely deny or frivolously contest relevant conduct that the court determined to be true. Id.

5

During the presentence investigation, Patino submitted the following statement through counsel:

> I have consulted with my attorney and understand the importance of this statement. I committed the offense as alleged in Count 1 of my indictment.
>
> On or about July 21, 1994, I transported Cesar Ramirez-Alvarez who was in this country illegally from the residence at 6426 Leedale in Houston, Texas to the parking lot in front of the Weiners store at 11703 Eastex Freeway at Houston, Texas using a red GMC pickup truck.
>
> I understand the crime I committed and my actions are sinful. I have caused great pain and embarrassment to my family. I wish I could go back in time and not have committed this crime. I miss my family and wish I could be with them. Yet, I understand that I must be punished.

The PSR recommended no adjustment for acceptance of responsibility and Patino objected. In those objections, Patino further admitted that he "drove two of the aliens into Houston and attempted to collect money obviously due to other individuals" for the aliens' release. The probation department responded with an addendum to the PSR, arguing that Patino was not entitled to an adjustment because Patino had not admitted all of the conduct comprising the offense. Specifically, the probation department claimed that Patino failed to admit that he negotiated for and received fees for the release of some of the aliens.

At sentencing, the probation department expressed the opinion that § 1324 offenses "typically" involve the receipt of fees by one or more people. Based on that observation alone, the probation department concluded that Patino had not accepted responsibility "for the conduct comprising the offense of conviction." Without

6

further discussion, the district court adopted the PSR, denying Patino an adjustment for acceptance of responsibility.

The government's position is that Patino failed to admit or falsely denied that he (1) transported aliens to Houston; (2) negotiated for Cesar's release; and (3) collected fees for the release of other aliens. Count 1 of the indictment alleges that Patino transported Cesar "within the United States . . . to the parking lot in front of the Weiner's store located at 11703 Eastex Freeway in Houston, Texas in a pickup truck." The indictment does not charge Patino with transporting the other two aliens to Houston or with accepting fees for the release of any aliens. Therefore, the acts identified by the government constitute additional conduct relevant to the offense, rather than conduct comprising the offense charged.

Patino admitted that he drove the truck to Houston and that he attempted to collect fees for the release of the aliens. Patino did not deny that he actually received those fees. Further, Patino's statement that any money he collected would have been for the benefit of other individuals, which was offered in response to the probation department's position that Patino played an leadership role in the offense, does not amount to a false or frivolous denial of additional conduct relevant to Patino's § 1324 offense.

For the first time on appeal, the government also argues that Patino was not entitled to an adjustment for acceptance of responsibility because he falsely denied additional relevant

7

conduct relating to his leadership role in the offense. Patino had no duty to affirmatively admit those facts. § 3E1.1 comment. n.1(a). Further, Patino did not frivolously deny those facts in his objections to the PSR. Patino objected to the legal characterization (leadership role) given his actions; he did not, in that document or at sentencing, deny any facts stated in the PSR concerning his role.[3] Further, Patino's failure to acknowledge his leadership role was not offered as a justification for denying an acceptance of responsibility adjustment, either in the PSR or at sentencing. The government cannot now raise Patino's responses, which were offered to controvert the probation department's position that he played a leadership role and which are not inconsistent with the facts stated in the PSR, to justify the district court's refusal to adjust for acceptance of responsibility.

The determination of the sentencing judge on acceptance of responsibility is entitled to great deference on review. U.S.G.G. §3E1.1 comment. n. 5; see also United States v. Vital, 68 F.3d 114, 120 (5th Cir. 1995). Nonetheless, failure to depart downward for acceptance of responsibility constitutes reversible error when that decision is made without any foundation. United States v. Calverly, 11 F.3d 505, 514 (5th Cir. 1993), opinion reinstated and adopted on reh'g, 37 F.3d 160 (5th Cir. 1994), cert. denied, 115 S. Ct. 1266 (1995). Patino adequately admitted the conduct comprising

---

[3]Patino's primary argument was that because co-defendants engaged in factually similar conduct, he did not play a leadership role.

8

the offense and either admitted or did not falsely deny the additional relevant conduct identified by the government. There was, therefore, no foundation for the district court's refusal to grant a two-level adjustment for acceptance of responsibility and Patino must be resentenced.

### PATINO'S ROLE IN THE OFFENSE

Patino also claims that the district court erred by increasing his base offense level two points for his aggravating role in the offense pursuant to guideline § 3B1.1(c) (providing for two level increase if defendant was an organizer, leader, manager or supervisor in any criminal activity involving fewer than 5 participants). The district court's factual determination that Patino played a leadership role in the offense is reviewed for clear error. United States v. Narvaez, 38 F.3d 162, 166 (5th Cir. 1994), cert. denied, 115 S. Ct. 1803 (1995).

Relative to the offense charged, that of transporting Cesar to the department store, the PSR states that Patino answered the INS agent's telephone call, identified himself as the person to talk with, arranged for the rendezvous with the INS agent at the department store, drove the truck transporting Cesar to the rendezvous point to arrange Cesar's release, and then exited the truck and approached the agent first.

Relevant conduct beyond the charged offense may also be considered for purposes of determining whether an enhancement on the basis of the defendant's role is appropriate. §3B1.1 (1994) intro. comment. The PSR establishes that Patino was the party

identified as responsible, along with Valtierra-Acevedo, for contacting the friends and relatives of aliens about their release. Patino transported aliens, from a point outside Houston, to the Leedale house. Patino also collected fees from third parties for the release of smuggled aliens.

Patino argues that other co-defendants were equally involved in the offense. As to the charged offense, there are no facts suggesting that Patino's only co-defendant in count 1 was similarly involved in the offense. The record clearly supports the district court's determination that Patino played a leadership role in the charged offense and the district court's two-level enhancement is affirmed.

## CONCLUSION

The district court's determination that Patino played a leadership role in the offense, which justified a two-level enhancement is AFFIRMED.

The district court's determination that Patino failed to accept responsibility, which justified its refusal to adjust downward two levels is REVERSED, Patino's sentence is VACATED, and the case is REMANDED for resentencing.