**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-50232

(Summary Calendar)
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REYNALDO CARRASCO RAMOS,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas
(M0-95-CR-15)

December 23, 1996

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Reynaldo Carrasco Ramos appeals his convictions of four counts of distribution of cocaine in violation of 21 U.S.C. § 841 and one count of maintaining an establishment of manufacturing operations in violation of 21 U.S.C. § 851. We affirm.

_____

[*] Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

In December 1994, Detective Manuel Beltran of the Midland, Texas Police Department targeted suspected drug trafficking by Ramos. Since Ramos knew Beltran and the other local police officers, Beltran enlisted a confidential informant, Andy Bonilla, to approach Ramos to purchase cocaine. Wearing a concealed transmitter, Bonilla went to Tio's Lounge where he met briefly with Ramos and offered to purchase an ounce of cocaine. Ramos agreed to meet Bonilla at Ramos's residence to make the sale. During this same recorded conversation, Ramos referred to 400 pounds of marijuana in his possession. Beltran and another officer followed Ramos and Bonilla to Ramos's residence, where Bonilla paid Ramos $700 in exchange for approximately one ounce of cocaine. Bonilla purchased cocaine from Ramos on three other occasions; Beltran monitored each purchase by transmitter.

During voir dire at Ramos's trial, the prosecutor used a peremptory challenge to exclude an Hispanic venireperson, Celia Sosa. The district court required the prosecutor to state his reason for striking Ms. Sosa; the prosecutor explained that he struck Ms. Sosa because she had been observed sleeping during a prior court session. The district court accepted this explanation and dismissed Ms. Sosa.

During trial, Ramos sought admission of an affidavit signed by Bonilla and prepared in connection with a prior, unrelated cocaine case. In the affidavit, Bonilla states that he lived with "Disco

Joe" Martinez and Tracy Bonilla (Bonilla's sister) at the time police raided their residence.  Bonilla states that a small amount of cocaine found during the raid of the residence belonged to him. Ramos sought admission of the affidavit during his trial as evidence that Bonilla planted cocaine in other people's homes and therefore may have planted cocaine in Ramos's home.  The district court excluded the affidavit based on its finding that the affidavit did not indicate that Bonilla planted drugs in the residence.[2]  The court ruled, however, that Ramos could question Bonilla during cross-examination about Martinez's drug use and about any prior statements Bonilla had made about Martinez. Defense counsel did not pursue this line of questioning.

The prosecution presented audiotaped conversations between Bonilla and Ramos as evidence against Ramos.  Portions of the recordings were inaudible and contained words spoken by unidentified speakers.  The district court ordered the redaction of portions of two recordings and several pages of corresponding

---

[2]    The relevant portion of the affidavit provides:

> On or about February 4, 1993, I was living with Joe Martinez and my sister Tracy Bonilla at 1202 S. Dallas, Midland, Texas 79701.  On February 4, 1993, I had gone to buy some flowers because it was Tracy Bonilla's birthday. While I was gone to the florist, the house was raided and a very small amount of cocaine was found.  The cocaine that was found in the house was mine.  Neither Joe Martinez nor Tracy Bonilla knew that I had it in the house nor did they have knowledge that I used cocaine occasionally and on a recreational basis.

Appellee's Br. at 10-11 (Def.'s Ex. 16).

transcripts, expressing concern about both the inaudibility and unidentified speakers and about Ramos's reference to his possession of 400 pounds of marijuana.

After Ramos's conviction, a probation officer prepared a Presentence Investigation Report ("PSR") for the court in which he relied upon Ramos's recorded reference to his possession of 400 pounds of marijuana in calculating Ramos's offense level for sentencing. Though Ramos objected to the inclusion of this information in the PSR and objected to its consideration at his sentencing, the district court found that Ramos's statement should be considered as evidence of relevant conduct under § 1B1.3 of the Sentencing Guidelines (1995). The district court sentenced Ramos to sixty-three months in custody, three years supervised release, and a $250 fine.

II

Ramos presents four arguments on appeal: (1) that the suppression of Bonilla's affidavit violated Ramos's Sixth Amendment right to confront and cross-examine witnesses against him; (2) that the district court abused its discretion by admitting audiotape recordings and transcripts that contained inaudible portions and unidentified speakers; (3) that the district court clearly erred in finding 400 pounds of marijuana attributable to Ramos for sentencing purposes; and (4) that the district court clearly erred in finding that the prosecutor did not discriminate based on race in using a peremptory challenge to strike an Hispanic juror.

-4-

Ramos contends that the district court's refusal to admit Bonilla's affidavit violated Ramos's Sixth Amendment right to cross-examine witnesses against him. He argues that the affidavit constituted evidence that Bonilla had previously planted drugs in someone else's residence, and thus may have planted cocaine in Ramos's residence.

A trial court has wide latitude to impose reasonable restraints upon a defendant's right to cross-examination. *United States v. Alexius*, 76 F.3d 642, 644 (5th Cir. 1996). We review a district court's restriction of the scope of cross-examination for an abuse of discretion. *Id.* To demonstrate an abuse of discretion, Ramos must show that the limitations imposed upon his counsel's cross-examination were clearly prejudicial. *United States v. Restivo*, 8 F.3d 274, 278 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 115 S. Ct. 54, 130 L. Ed. 2d 13 (1994). In determining whether the district court abused its discretion, "the relevant inquiry is whether the jury had sufficient information to appraise the bias and motives of the witness." *United States v. Tansley*, 986 F.2d 880, 886 (5th Cir. 1993).

We find no abuse of discretion in the district court's refusal to admit the affidavit. The plain language of the affidavit simply does not support Ramos's characterization of its contents. In addition, Ramos has not demonstrated any clear prejudice as a result of the claimed limitation on his cross-examination of

Bonilla. The district court ruled that Ramos could question Bonilla regarding matters addressed in the affidavit, and Ramos failed to do so. Any prejudice Ramos may have suffered as a result of the jury's lack of information regarding these matters is self-inflicted.

Ramos also argues that the district court abused its discretion by admitting audiotape recordings and corresponding transcripts that contained inaudible portions and unidentified voices. Rulings on the admissibility of evidence are within the discretion of the trial court. *United States v. Eakes*, 783 F.2d 499, 506 (5th Cir.), *cert. denied*, 477 U.S. 906, 106 S. Ct. 3277, 91 L. Ed. 2d 567 (1986). We review those rulings only for an abuse of discretion. *Id.* at 506-07.

Tapes are not *per se* inadmissible because they are partially inaudible; the issue is whether the unintelligible portions "are so substantial as to render the recording as a whole untrustworthy." *United States v. Greenfield*, 574 F.2d 305, 307 (5th Cir.) (quoting *United States v. Avila*, 443 F.2d 792, 795 (5th Cir.), *cert. denied*, 404 U.S. 944, 92 S. Ct. 295, 30 L. Ed. 2d 258 (1971)), *cert. denied*, 439 U.S. 860, 99 S. Ct. 178, 58 L. Ed. 2d 168 (1978). This determination is left to the sound discretion of the trial judge. *Id.*

Ramos does not argue that the unintelligible portions of the tapes were so substantial as to render the recordings as a whole

untrustworthy. He argues that the government did not lay a proper foundation for admission of the tapes. The record reflects, however, that the district court specifically clarified the foundation for admission of the recordings when it questioned Beltran about the operation of the recording device, the operator's competence, the accuracy of the recordings, changes, additions or deletions to the recordings, the chain of custody, and the voluntariness of the recordings. In addition, the district court redacted portions of the recordings and corresponding transcripts, thereby substantially reducing the inaudible portions and eliminating most of the statements made by unidentified speakers. We find no abuse of discretion in the district court's admission of the recordings and corresponding transcripts.

Ramos next contends that the district court clearly erred in finding 400 pounds of marijuana attributable to him for sentencing purposes. We review for clear error a district court's factual findings regarding the quantity of drugs attributable to the defendant for sentencing purposes. *United States v. Vital*, 68 F.3d 114, 120 (5th Cir. 1995).

In determining the relevant facts at sentencing, the district court is not restricted to information that would be admissible at trial. *Id.* Instead, it may consider any information that has sufficient indicia of reliability to support its probable accuracy. *Id.* If information is presented to the sentencing judge with which

the defendant would take issue, the defendant bears the burden of demonstrating that the information cannot be relied upon because it is materially untrue, inaccurate, or unreliable. *United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991).

In making its drug quantity finding, the district court relied upon the recording of Ramos's negotiations with Bonilla and others at Tio's Lounge, during which Ramos stated that he had about 400 pounds of marijuana in his possession. This information was also contained in the PSR prepared by the probation officer. Though Ramos argued that no evidence supported his possession of the marijuana, he offered no affidavits or other evidence rebutting his recorded statement that he possessed the marijuana nor did he offer any evidence demonstrating that the statement was materially untrue, inaccurate, or unreliable. *See Vital*, 68 F.3d at 120 ("[I]f no relevant affidavits or other evidence is submitted to rebut the information contained in the PSR, the court is free to adopt its findings without further inquiry or explanation."). Thus, we find no clear error in the district court's drug quantity finding for sentencing purposes.

Lastly, Ramos argues that the district court clearly erred in finding that the prosecutor did not discriminate based on race in using a peremptory challenge to dismiss an Hispanic juror. We review a district court's decision regarding a *Batson* violation for clear error. *Hernandez v. New York*, 500 U.S. 352, 369, 111 S. Ct.

1859, 1871, 114 L. Ed. 2d 395 (1991); *United States v. Clemons*, 941 F.2d 321, 325 (5th Cir. 1991).  Because the trial court's findings on the ultimate question of discriminatory intent "largely turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference."  *Hernandez*, 500 U.S. at 364, 111 S. Ct. at 1868-69 (quoting *Batson v. Kentucky*, 476 U.S. 79, 98 n.21, 106 S. Ct. 1712, 1724 n.21, 90 L. Ed. 2d 69 (1986)).

In this case, the district court accepted the prosecutor's explanation that he dismissed Ms. Sosa because she had been observed sleeping in a prior court session.  Exercising a peremptory strike against a sleeping venireperson does not offend *Batson*.  *See United States v. Maseratti*, 1 F.3d 330, 335-36 (5th Cir. 1993) (finding that prosecutor's explanation that he struck black venireperson because "she appeared to be sleeping during part of the voir dire" was "clearly race-neutral, and Appellants' arguments [of *Batson* violations] are without merit"), *cert. denied*, 510 U.S. 1129, 114 S. Ct. 1096, 127 L. Ed. 2d 409 (1994), *and cert. denied*, ___ U.S. ___, 114 S. Ct. 1552, 128 L. Ed. 2d 201 (1994), *and cert. denied*, ___ U.S. ___, 115 S. Ct. 282, 130 L. Ed. 2d 198 (1994).  Thus, we find no clear error in the district court's decision to dismiss Ms. Sosa.

AFFIRMED.