IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-10559
Summary Calendar

_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

versus

LESLIEDAWN CLARK, STEVEN LANE JOHNSON,
CHARLES A. DIXON, DONALD ALAN FRIDDELL,
SHIRLEY A. SUMMERS, RICHARD LEE SUMMERS,
LEROY SCHAEFER, and ROXANNE SCHAEFER,

                              Defendants-Appellants.


_____

Appeals from the United States District Court
for the Northern District of Texas
_____
April 17, 1998

Before JOLLY, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:

Defendants, Lesliedawn Clark, Steven Lane Johnson, Donald
Alan Friddell, Charles Dixon, Shirley S. Summers, Richard Lee
Summers, Leroy Schaefer, and Roxanne Schaefer, appeal from the
judgments of conviction entered against them by the United States
District Court for the Northern District of Texas.  Clark and
Leroy Schaefer also appeal the computation of their sentences.
For the reasons set forth below, we AFFIRM.


                              I.

Defendants were involved with, and operated in part, the
Pilot Connection Society ("TPCS"), an organization with the

stated purpose of putting the IRS (which it considered "domestic enemy number one") out of business. In furtherance of this objective, TPCS created and sold an "untax package," which purportedly taught people how to remove themselves from the federal tax system. TPCS marketed its untax package through informational seminars given across the country. TPCS publicized its seminars through flyers and advertisements, in which it claimed that taxes were voluntary, that there was no requirement for a person to file tax returns, that the tax system was illegal, and that there were legal ways not to pay taxes.

At the seminars,[1] TPCS represented that the untax package provided a way of legally and permanently "untaxing" oneself so that a person would no longer be required to pay income taxes or file a return. Seminar attendees were informed, however, that TPCS was a First Amendment society and that it could not give out information that could be construed as legal advice except to its members. Thus, if a person wanted to learn more about the "untaxing" process, he was required to become a TPCS member, at a cost of $45.

The $45 membership fee entitled a TPCS member to a two-hour consultation at a follow-up meeting with a sales representative of TPCS, referred to as an Associate Member.[2] At the follow-up meeting, the Associate Member attempted to sell the untax package

---

[1] Seminar attendees were often required to sign a statement indicating that they were not a spy or a government agent.

[2] A TPCS member could become an Associate Member for the cost of $10,000.

- 2 -

to the new TPCS member. The fee for being untaxed was generally the greater of $2100 or ten (10) percent of the dollar amount owed to the government. In addition to selling the untax package, Associate Members also counseled and assisted new members in the untaxing process. As compensation, Associate Members received a percentage of the untaxing fee paid by a new member.

The untax package included sample letters to be used to inform the government that the member was not liable for tax. The package also contained samples of letters to be sent by members to employers, bankers, and mortgage holders. The sample letters purportedly provided a method whereby TPCS members could revoke their signatures from their bank accounts and revoke previously filed tax returns.

Another part of the untaxing process involved TPCS members filing new Forms W-4 so that no federal income tax was withheld from their paychecks. The evidence showed that, although the Associate Members did not advise TPCS members of the exact number of exemptions that they should claim, the Associate Members clearly advised their clients to claim as many exemptions as necessary to eliminate withholding taxes. Thus, members were often left to simply guess at the number of exemptions that they would need to claim. If a member's first guess was not high enough to eliminate withholding, TPCS advised the member to file another Form W-4 claiming an even higher number of exemptions until he finally found a number high enough to completely eliminate withholding. Some TPCS members claimed as many as

thirty (30) exemptions on their new Forms W-4. TPCS further instructed its members completing new Forms W-4 to write "For Identification Only" next to their social security numbers and to write "Without prejudice, UCC 1-207" next to their signatures.

In addition to the untaxing process, the untax package had a second component for the protection of assets. TPCS advised its members to close their bank accounts to prevent the IRS from seizing the funds in those accounts. TPCS also suggested that its members barter or deal only in cash or money orders. TPCS further advised its members that all of a member's money could be put into a trust fund for protection from the IRS and that the trust could not be taxed.

Finally, TPCS suggested several methods that its members should employ in fighting the IRS, including filing a claim for abatement, suing IRS employees, and filing a Title 15 commercial lien. TPCS claimed that one of its members filed a commercial lien against his employer, IRS agents, and others for $236,000,000. TPCS informed members that the lien would last for 100 years and would appear on the credit report of the public official against whom it was filed. TPCS also suggested that its members could have IRS agents attempting to do their jobs arrested by the sheriff or could make citizen's arrests.


II.

On June 7, 1995, a sixteen (16) count indictment was returned against the defendants. Count 1 of the indictment charged all of the defendants with conspiracy to defraud the

United States, in violation of 18 U.S.C. § 371.  The remaining counts charged individual defendants with aiding and abetting the filing of fraudulent Forms W-4, in violation of 18 U.S.C. § 7206(2).  Friddell and Shirley Summers, however, were named only in Count 1.  On January 19, 1996, a jury convicted all eight defendants of conspiracy to defraud the United States; Clark of Counts 2 and 3; Johnson of Count 8; Dixon of Counts 5 and 7; Richard Summers of Counts 7, 9, and 10; Leroy Schaefer of Counts 12, 14, 15, and 16; and Roxanne Schaefer of Counts 12, 13, and 14.  The jury acquitted Clark of Count 4, Dixon of Count 6, and Roxanne Schaefer of Count 11.  All of the defendants appeal their convictions.  Clark and Leroy Schaefer also appeal the computation of their sentences.

III.

All of the defendants argue that Count 1 of the indictment is insufficient as a matter of law.  Specifically, the defendants argue that the indictment is defective because it merely recites the "generic" language of the statute without identifying the specific facts underlying the offense and because it fails to identify the object of the alleged scheme to defraud the United States.

Although we agree that the indictment is far from a model of clarity, "[t]he test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards."  United States v. Gordon, 780 F.2d 1165, 1169 (5th Cir. 1986).  An indictment is

- 5 -

sufficient in a constitutional sense if it "(1) enumerates each prima facie element of the charged offense, (2) notifies the defendant of the charges filed against him, and (3) provides the defendant with a double jeopardy defense against future prosecutions." United States v. Flores, 63 F.3d 1342, 1360 (5th Cir. 1995) (quotation and citation omitted). We find that the conspiracy charge in this case meets these minimal standards.

To allege a violation of § 371, the government must allege two elements. First, the government must allege that two or more people agreed to defraud the United States. 18 U.S.C. § 371. The defraud clause of § 371 reaches both a conspiracy to cheat the government out of property or money and any conspiracy designed to impair, obstruct, or defeat the lawful function of any department of the government. See Hammerschmidt v. United States, 265 U.S. 182, 187-88, 44 S. Ct. 511, 512 (1924); United States v. Hopkins, 916 F.2d 207, 213 (5th Cir. 1990). Second, as in all conspiracies, the government must allege that at least one of the alleged conspirators committed an overt act in furtherance of the objectives of the conspiracy. See United States v. Burton, 126 F.3d 666, 670 (5th Cir. 1997).

In this case, Count 1 of the indictment tracked the language of the defraud clause of § 371 by charging that the defendants "conspired, agreed, and combined to defraud the United States." Although we agree with the defendants that this language, by itself, would have been insufficient, the indictment does more than merely recite the language of the statute. In the "Manner and Means" section, the indictment outlined the scheme in which

the defendants engaged, thereby clearly establishing that the defendants were charged with cheating the government out of money and with "impairing, obstructing, or defeating" a lawful function of the IRS -- i.e., collecting taxes.  In sum, therefore, when viewed as a whole, we find that the indictment adequately informed the defendants of the nature of the charges against them and was sufficiently specific to enable them to raise the defense of double jeopardy in any future prosecutions.

IV.

Friddell, Clark, Leroy Schaefer, and Roxanne Schaefer challenge the sufficiency of the evidence to support their convictions under § 371.  In reviewing the sufficiency of the evidence, we view the evidence and all inferences to be drawn from it in the light most favorable to the verdict to determine if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  United States v. Sneed, 63 F.3d 381, 385 (5th Cir. 1995) (citing United States v. Pruneda-Gonzalez, 953 F.2d 190, 193 (5th Cir. 1992)).

As discussed above, to obtain a conviction under § 371, the government must prove that the alleged conspirators agreed among themselves to defraud the United States and that at least one of the alleged conspirators committed an overt act in furtherance of the conspiracy.  United States v. Chesson, 933 F.2d 298, 306 (5th Cir. 1991).  The agreement, however, need not be an express or formal agreement -- "a tacit understanding is sufficient." United States v. Hopkins, 916 F.2d 207, 212 (5th Cir. 1990).

The evidence in this case overwhelmingly showed that the defendants knowingly participated in a conspiracy to defraud the United States.  Specifically, the evidence showed that each of these defendants was at least an Associate Member (Clark was also an "Area Coordinator") of TPCS, an organization created and designed to put the IRS out of business by having its members falsify documents and refuse to pay taxes.  As Associate Members, the defendants were responsible for recruiting new members and assisting those members in the untaxing process.  In short, these defendants instructed new members how to avoid paying taxes and assisted them in preparing the necessary documents.  Given the role of the Associate Members in this scheme, and in light of the evidence introduced at trial as to each of these defendants, we find that a rational jury could have easily concluded that each of these defendants conspired to defraud the United States, in violation of 18 U.S.C. § 371.

V.

Leroy and Roxanne Schaefer also contest the sufficiency of the evidence that they aided and assisted in the preparation of false and fraudulent Forms W-4, in violation of 18 U.S.C. § 7206(2).  A conviction under § 7206(2) requires proof that the defendant willfully aided, assisted, counseled, or advised another in the preparation or presentation under the internal revenue laws of a document that is fraudulent or false as to any material matter.  18 U.S.C. § 7206(2).

The evidence in this case clearly shows that Roxanne Schaefer counseled and advised Robert Hennis (Count 12), Kim Hennis (Count 13), and James Perry (Count 14), and that Leroy Schaefer counseled and advised Robert Hennis (Count 12), James Perry (Count 14), and James Campbell (Counts 15 and 16), to file new Forms W-4 with increased exemptions so that no withholding taxes would be withheld from their paychecks. It is immaterial that Mr. and Mrs. Schaefer did not advise these individuals as to the exact number of exemptions that they should claim or that they were not present when the forms were completed. The evidence unmistakably shows that they counseled and advised these TPCS members to alter their Forms W-4 so that no federal income taxes were withheld from their paychecks, and that, based on this advice, those individuals then filed fraudulent Forms W-4. Consequently, we find that evidence sufficient to support these convictions.

VI.

Clark and Leroy Schaefer argue that their sentences are excessive because the district court computed the sentences based on an erroneous tax loss figure.[3] We disagree.

This court reviews the application of the Sentencing Guidelines de novo, and it reviews the sentencing court's factual

---

[3] Clark also argues that the Sentencing Guidelines are unconstitutional and that she should not have received a term of imprisonment because Congress did not intend for first-time, nonviolent offenders to be sentenced to prison. These arguments are meritless. See, e.g., United States v. White, 869 F.2d 822, 826-27 (5th Cir. 1989).

findings for clear error. United States v. Edwards, 65 F.3d 430, 432 (5th Cir. 1995). A factual finding is not clearly erroneous if it is "plausible in light of the record as a whole." Id. (citation omitted). The presentence report is considered reliable evidence for sentencing purposes. United States v. Vital, 68 F.3d 114, 120 (5th Cir. 1995). If the defendant does not submit affidavits or other evidence to rebut the information in the PSR, the district court may "adopt [the PSR] without further inquiry or explanation." Id.

In a tax loss case, a defendant's sentence may be based on both the tax loss that he caused directly and the tax loss caused by his coconspirators, if that loss was reasonably foreseeable to the defendant. United States v. Charroux, 3 F.3d 827, 838 (5th Cir. 1993). This court reviews the district court's determination of the tax loss for clear error. United States v. McCord, 33 F.3d 1434, 1453 (5th Cir. 1994).

In this case, the PSR provided that the tax harm reasonably foreseeable to Clark was $14,832,805 and that the tax loss reasonably foreseeable to Leroy was $14,244,280. In part, these figures were based on the foreseeable tax losses to the government from the date upon which the defendants became Associate Members in TPCS (i.e., after the defendants joined the conspiracy). See United States v. Carreon, 11 F.3d 1225, 1233-34 (5th Cir. 1994). Because Clark and Leroy Schaefer objected to the amounts in the PSR, the government called Special Agent Sanders to explain how the IRS had arrived at the estimated loss figures provided to the probation officer. Following extensive

cross-examination by all defendants, the district court found that Agent Sanders's testimony established the foreseeable tax harm by a preponderance of the evidence.  Consequently, the court adopted the findings in the PSR.  After reviewing the testimony of Agent Sanders and ascertaining that the defendants did not introduce any evidence to contradict Agent Sanders's testimony or rebut the probation officer's computation of the foreseeable loss, we conclude that the district court's determination of loss for sentencing purposes was not clearly erroneous.  See Vital, 68 F.3d at 120.

## VII.

Clark also contends that the district court erred in not instructing the jury on her First Amendment defense.  There was, however, no foundation for such an instruction because the charged conduct (conspiracy to defraud) was not protected by the First Amendment.  See United States v. Fleschner, 98 F.3d 155, 158-59 (4th Cir. 1996), cert. denied, 117 S. Ct. 2484 (1997).  Accordingly, the district court did not err in refusing to give such an instruction.

## VIII.

Clark next contends that the district court erred in removing the question of the materiality of the Forms W-4 from the jury's consideration.  Because Clark did not object in the district court to the challenged instruction, we review for plain error.  See Johnson v. United States, 117 S. Ct. 1544 (1997).

- 11 -

After careful review of the record, we conclude that, even assuming that it was error to remove the issue of materiality from the jury, see United States v. Klausner, 80 F.3d 55, 58-61 (2d Cir.1996) (holding that materiality under § 7206(2) was a question of law for the court because false itemized deductions necessarily resulted in an inaccurate computation of tax), the error did not seriously affect the fairness, integrity or public reputation of judicial proceedings. See Johnson, 117 S. Ct. at 1550. The very purpose of Form W-4 is to determine the amount of taxes that should be withheld from an employee's paycheck, and the amount of withholding depends on the number of exemptions claimed. Thus, it is beyond reasonable dispute that the number of allowances claimed on a Form W-4 is a material matter. Accordingly, we find no plain error.

## IX.

In addition to the claims set forth above, defendant Clark raises the following claims: 1) that the district court erred in refusing to give her requested instruction as to her good faith defense; 2) that the government withheld exculpatory evidence from her in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963); 3) that the district court abused its discretion in excluding certain documents and testimony from evidence; 4) that the district court engaged in judicial misconduct; 5) that the government introduced perjured testimony; 6) that the government's attorneys made improper statements before the jury; 7) that the prosecution of the defendants was vindictive because

not all TPCS members were prosecuted; and 8) that she was excluded from certain stages of the trial. After a careful review of the record as to each of these points, we find no reversible error.

### X.

For the reasons set forth above, we AFFIRM.