**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 01-11017**

_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**LARRY WAYNE ELLIS,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:01-CR-20-1-X)
_____

July 11, 2002

Before HIGGINBOTHAM, JONES, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Pursuant to a written agreement, Larry Wayne Ellis pled guilty to one count of securities fraud. In this appeal, Ellis raises two objections to the district judge's application of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

federal sentencing guidelines in determining his sentence.   We reject both objections and **AFFIRM** Ellis's sentence.

Ellis solicited persons to invest money in investment contracts and promissory notes with his companies.   He represented to these investors that their money would be used to buy and operate automatic teller machines (ATMs) from which they would get the profits and that this ATM investment program had already successfully generated significant returns.   After obtaining investor funds on the basis of these and other representations, Ellis diverted a substantial amount of investor funds to his own use.   To disguise the diversions, he sent statements to some investors that falsely represented the condition of their investments and used the funds of new victims to pay "profits" to earlier investors.   The fraudulent scheme involved no fewer than 57 investors who sustained combined losses of over $700,000 on an aggregate investment of about $1.12 million.

Pursuant to Ellis's guilty plea, Ellis and the Government agreed to a stipulation recommending that the court not impose the sentencing enhancements that Ellis attacks in this appeal.  Ellis's presentence report made the same recommendations.   The district court rejected these recommendations.  On appeal, Ellis argues that the district court was wrong to do so.   For the reasons stated

below, we are not persuaded that the district court committed reversible error with respect to these matters.

First, Ellis objects to the district court's decision to reject the stipulation's recommendation that the court grant a decrease in Ellis's guidelines score pursuant to U.S.S.G. § 3E1.1, which provides for such a decrease "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Because "[t]he sentencing judge is in a unique position to evaluate the defendant's acceptance of responsibility," we review the district court's decision on this issue with "great deference." U.S.S.G. § 3E1.1 cmt. n.5. This standard of review is even more deferential than the "clear error" standard; we affirm unless the decision was "without foundation." United States v. Brenes, 250 F.3d 290, 292 (5th Cir. 2001); United States v. Pierce, 237 F.3d 693, 694-95 (5th Cir. 2001).

One of the factors that the district court may consider in determining whether to grant a reduction for acceptance of responsibility is whether the defendant "truthfully admitt[ed] the conduct comprising the offense of conviction, and truthfully admitt[ed] or [did] not falsely deny[] any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 3E1.1 cmt. n.1(a). "[A] defendant who falsely denies . . . relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of

3

responsibility."  Id.  See United States v. Patino-Cardenas, 85 F.3d 1133, 1135 (5th Cir. 1996).  There was evidence from which the district court could have concluded that Ellis had not truly accepted responsibility for his conduct because he had falsely denied that his ATM "business" was a fraudulent scheme from the beginning.  Because the district court's decision was not without foundation, we affirm it.  See Pierce, 237 F.3d at 695; United States v. Galan, 82 F.3d 639, 640 (5th Cir. 1996); United States v. Vital, 68 F.3d 114, 120-21 (5th Cir. 1995).

Second, Ellis objects to the district court's decision to disregard another recommendation contained in the stipulation and to impose a two-level enhancement under former U.S.S.G. § 2F1.1(b)(3) for using "mass-marketing" in the commission of his offense.[1]  "Mass-marketing," as used in the guidelines provision, "means a plan, program, promotion, or campaign that is conducted through solicitation by telephone, mail, the Internet, or other means to induce a large number of persons to (A) purchase goods or services; . . . or (C) invest for financial profit."  U.S.S.G. § 2F1.1 cmt. n.3.  Ellis used brochures and other printed materials, an Internet World Wide Web site, a newspaper advertisement, and five contract salespersons to attract investors.  Ellis argues that

---

[1]    Former U.S.S.G. § 2F1.1(b)(3) has since been repealed and replaced by current U.S.S.G. § 2B1.1(b)(2)(A)(ii).  See U.S.S.G., supplement to app. C (Nov. 2001), amendment 617.

4

these solicitation methods did not amount to "mass-marketing" because they did not actually induce large numbers of persons to invest in his fraudulent scheme. We disagree. The application note does not define mass-marketing as "a plan, program, promotion or campaign that is conducted through solicitation . . . <u>and</u> <u>induces</u> a large number of persons" to purchase, invest, or the like. Mass-marketing efforts can be mass-marketing efforts even if they are ineffectual. <u>See</u> <u>generally</u> <u>United States v. Pirello</u>, 255 F.3d 728, 732 (9th Cir. 2001), <u>cert. denied</u>, 122 S.Ct. 577 (2001).

Judgment **AFFIRMED.**

5