IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-31252

_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

versus

ARTHUR MITCHELL, III,

                              Defendant-Appellant.

- - - - - - - - - -
Appeal from the United States District Court
for the Eastern District of Louisiana
- - - - - - - - - -

January 29, 1999

Before JOLLY, DAVIS, and WIENER, Circuit Judges.

JACQUES L. WIENER, JR., Circuit Judge.

In this direct criminal appeal, Defendant-Appellant Arthur Mitchell III seeks (1) reversal of his conviction for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and (2) vacatur of the incarceration portion of his sentence which condemns him to serve 120 months in prison. Regarding his conviction, Mitchell contends that he was erroneously denied a mistrial for impermissible comments to the jury by the district court in response to a question submitted by the jurors during the course of their deliberations. Regarding his sentence, Mitchell complains that the district court erred by applying § 2K2.1(c) of the United States Sentencing Guidelines ("U.S.S.G." or the "the

Guidelines") to produce an unlawfully lengthy term of imprisonment, contending that the court's unauthorized use of that provision resulted from the clearly erroneous factual determination that he possessed the firearm in question, under the seat of a car, "in connection with the commission or attempted commission of another offense...,"[1] specifically, the possession of crack cocaine located in a lock box inside the house where he resided.[2] This is the same house from which he had driven to take three small children to school; and the same car which law enforcement agents stopped several blocks from the house and in which they found the subject firearm.

Concluding that the district court did not commit reversible error in refusing to declare a mistrial on the basis of its comments to the jury, we affirm Mitchell's conviction. Concluding, however, that the district court clearly erred in determining that the evidence and its reasonable inferences support a finding that Mitchell possessed the gun in the car "in connection with" his uncharged possession of the cocaine in the house where he was staying with his girlfriend, we vacate Mitchell's sentence and remand to the district court for resentencing consistent with this opinion.

I.
FACTS and PROCEEDINGS

---

[1]  U.S.S.G. § 2K2.1(c)(1)(A).

[2]  Mitchell was not charged for the narcotics violation in this case; neither had he been convicted of possessing these drugs when he was sentenced.

2

On the morning of his arrest, Mitchell was observed by law enforcement personnel driving a car away from a house that he did not own or rent but in which he was residing at the time with his girlfriend.[3] When he was stopped and arrested, Mitchell was on the way to take three small children to school. The officers who stopped Mitchell searched the car and found a handgun under the driver's seat but found no drugs.[4]

The arresting officers took Mitchell back to the house and, with permission of the third party tenant, searched it. The search revealed (1) a plastic bag containing another gun and (2) a locked box containing approximately 24 grams of crack cocaine. Both the gun and the locked box were found in the living room of the house. Mitchell's girlfriend told the officers that this gun and the locked box belonged to Mitchell. A key chain containing, inter alia, two keys to the locked box and a key to the car were in Mitchell's possession at the time of his arrest.

Mitchell was tried twice in connection with the foregoing incident. In neither trial was he charged with or tried for any narcotics violation; rather, he was twice tried only for being a felon in possession of firearms. In the first trial, Count 1 implicated Mitchell's own gun, which was found in the living room of the house, and Count 2 implicated a gun that was found under the seat of the car he was driving when he was arrested. In that

---

[3] The record reflects that Mitchell had a permanent residence elsewhere at the time.

[4] The record reflects that the officer had a K-9 drug dog sniff the car but came up empty, i.e., no "alerts."

3

trial, Mitchell was acquitted of possession of the firearm in the house; however, the jury could not reach a verdict on his possession of the gun in the car, so a mistrial was declared on that count. Mitchell was tried again on that count; and in his second trial — the one from which the instant appeal is taken — the jury found him guilty of possessing the gun that was in the car.

Mitchell's PSR correctly cited the 1996 version of Guideline § 2K2.1(c) in recommending a base offense level of 28. The PSR concluded that Mitchell had possessed the gun "in connection with the commission or attempted commission of another offense," i.e., his possession with intent to distribute crack cocaine. In response to Mitchell's objections to this proposal, the probation officer who had prepared the PSR defended the § 2K2.1(c) recommendation, also cautioning the court that if it should sustain Mitchell's objection, his offense level would only be 14.[5] The court adopted the recommendation in the PSR and sentenced Mitchell accordingly.

---

[5] In so doing, the probation officer appears to have miscalculated the putative offense level: Mitchell had a prior felony conviction for burglary of an automobile and another for distribution of a counterfeit controlled substance, as a consequence of which his base level would have been 20, pursuant to § 2K2.1(a)(4)(A) if the court had sustained his objection under § 2K2.1(c). See § 2K2.1(a)(4)(A) (offense level is increased for felony conviction for crime of violence or controlled substance abuse); §§ 4b1.2(1)(ii), (2) (burglary of an automobile is not a crime of violence, but distribution of counterfeit controlled substance is a controlled substance offense).

Mitchell timely filed a notice of appeal, contesting the district court's refusal to grant a mistrial on the basis of its comments to the jury, and that court's sentencing grounded in its finding that he possessed the firearm in connection with another offense.

## II.
## ANALYSIS

### A.  Standard of Review

We review the trial court's denial of a motion for a mistrial for abuse of discretion.[6]  We review the sentencing court's application of the Guidelines de novo, but we review that court's factual findings under the clearly erroneous standard.[7]

### B.  Mistrial

Apparently mindful that Mitchell was not charged in the instant case for drug trafficking and that he had not been convicted on drug trafficking charges, the prosecutor took care not to mention drugs in explaining to the jury the circumstances of Mitchell's arrest.  In his opening statement, the prosecutor told the jury that the arresting officers saw Mitchell drive away from the house where he was staying and "lawfully stopped" him shortly after.  Although two officers testified that Mitchell's arrest was lawful, there was no explanation why he was stopped.  Like the prosecutor, Mitchell's defense counsel apparently was aware of the

---

[6]  United States v. Ramirez, 963 F.2d 693, 699 (5th Cir. 1992).

[7]  United States v. Edwards, 65 F.3d 430, 432 (5th Cir. 1995).

potential prejudice of jury awareness of Mitchell's involvement in narcotics, as counsel neither objected to the "lawfully stopped" conclusion nor cross-examined the officers on that point.

During the course of its deliberations, the jury sent the following note to the trial judge:

> The jury would like to know why the defendant was stopped in the first place. Why he has [sic] under surveillance. The jury would be better able to reach a verdict with answers to these questions.

When the trial court expressed consternation with the government's failure to adduce evidence about the circumstances of Mitchell's arrest, the prosecutor pointed out that he had intentionally refrained from mentioning drugs because Mitchell had not been convicted on drug charges at the time of the trial. The government reminded the court that evidence of the lawfulness of Mitchell's arrest was uncontroverted.

Mitchell urged the court not to comment on the evidence but instead to instruct the jurors that they would have to rely on their memories. Following a recess during which the court, in the presence of counsel, reviewed a transcript of the relevant testimony, the jury was instructed as follows:

> In the opening statement the United States Assistant U.S. Attorney stated as follows: "You will learn that [Mitchell] was watched by Agent Chuck Hustmyre and members of his surveillance team and they lawfully stopped him shortly after he was driving away from the residence he was staying at on Barrington Court."
>
> They lawfully stopped him. Then in the course of the examination of Sergeant Juselin and Agent Hustmyre,

6

"Question: Is there anything unusual about you having your weapon drawn?"

This is at the stop. You will recall that.

"Answer: No, sir. It's a felony stop."

"Question: Standard practice for you to have your weapon drawn in any arrest?"

"Answer: I will, yes."

And even more to the point, the testimony of Agent Hustmyre.

"Question: And on November 15, 1996, did you and others participate in a lawful stop and ultimate arrest of the defendant in this case, Arthur Mitchell?"

"Answer: Yes, sir."

The jury was then advised by the court that it was permitted to comment on the evidence, but that any such comment was merely an expression of opinion which could be disregarded because the jury is the sole judge of the facts. The court stated that it intended to comment on the evidence and that the jury could disregard the court's ensuing statements if it chose.

The court then told the jury that the government had "addressed the fact that this was a lawful stop," but that the court was "unable to go into the exact circumstances of [the stop]...because that it not material to the case. It is material to the case that this was a lawful stop." The court explained that the government had addressed the legality of the stop in its opening statement; that it had offered uncontroverted testimony from two witnesses that the stop was lawful; and that the government was not required to explain the circumstances of the

7

stop.  The court stated that it was merely calling these facts to the jury's attention and that the jury should draw its own conclusions from them.  The court reiterated that the jury is the sole judge of the defendant's guilt or innocence.

Counsel for Mitchell did not object during these statements but, after the jury had been excused to continue its deliberations, moved for a mistrial on the grounds that the court's comments were "improper" and "flat out wrong."  Defense counsel argued that the court erred by mentioning the prosecutor's opening statement because it was not evidence and that the court's reference to the opening statement had bolstered the actual evidence.  Counsel further argued that the court's statement that the legality of the stop had not been controverted, infringed on the presumption of innocence and the defendant's right to remain silent.  Defense counsel conceded, however, that he did not question that Mitchell had been lawfully stopped.

In a federal trial the court need not merely act as a moderator of the proceedings.[8]  The court may comment on the evidence, clarify the facts presented, and elicit facts not yet adduced.[9]  Even if the trial court makes an improper comment to the jury, the error does not entitle a defendant to a new trial unless the comment is substantial error and prejudicial to the defendant's

---

[8]  Moore v. United States, 598 F.2d 439, 442 (5th Cir. 1979).

[9]  Id.

8

case.[10]  On appeal, we view the proceedings as a whole to determine whether the trial judge "overstepped the limits imposed on [his] conduct."[11]  To rise to the level of error, the trial court's actions, "viewed as a whole, must amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor."[12]

We are satisfied that, in the instant case, the court's comments in response to the jury's question about the legality of the stop do not rise to the level of reversible error.  First, Mitchell does not dispute that the stop was legal.  Second, the legality of the stop clearly was not material to Mitchell's guilt or innocence.[13]  Even though that district court's statement that the legality of the stop was material was wrong, the innaccuracy of that statement was irrelevant to the propriety of the jury's verdict.

The court correctly instructed the jury that the arguments of the attorneys were not to be considered as evidence and that the jury was free to disregard the court's comments on the evidence.

---

[10]  See United States v. Wallace, 32 F.3d 921, 928 (5th Cir. 1994).

[11]  United States v. Carpenter, 776 F.2d 1291, 1294 (5th Cir. 1985)(finding no reversible error in the district judge's comment that he "had yet to hear a defense").

[12]  United States v. Flores, 63 F.3d 1342, 1360 (5th Cir. 1995)(internal quotation and citation omitted), cert. denied, 117 S. Ct. 87 (1996).

[13]  See 18 U.S.C. § 922(g)(1).

The jury is presumed to have followed these instructions.[14] Mitchell did not request that the jury be specifically instructed that the opening statements were not evidence, and he has failed to show that the absence of such an instruction constituted plain error.[15] We conclude that Mitchell has failed to show that the district court abused its discretion in denying the motion for a mistrial.[16]

C.   Sentence

As noted, the PSR employed Guideline § 2K2.1(c) to reach a base offense level of 28.  Guideline § 2K2.1(c)(1)(A) provides:

> (1) If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply...
>
> (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above.[17]

That Mitchell possessed the gun in question is no longer challenged.  To subject Mitchell to the provision of Guideline § 2K2.1(c), however, the court had to find by a preponderance of the evidence that the handgun found under the seat of the car was

---

[14]  Richardson v. Marsh, 481 U.S. 200, 211 (1987).

[15]  See United States v. Dukes, 139 F.3d 469, 476 (5th Cir.) (reviewing challenge to jury instruction for plain error when defendant did not request a specific instruction), cert. denied, 119 S. Ct. 215 (1998).

[16]  See Ramirez, 963 F.2d at 699.

[17]  U.S.S.G. 2K2.1(c)(1)(A) (emphasis added).

possessed by Mitchell either (1) "in connection with the commission or attempted commission of another offense" or (2) "with knowledge or intent that [the gun] would be...possessed in connection with the commission or attempted commission of another offense...."[18] The "other offense" here was his possession of a distribution quantity of crack cocaine in the locked box. With this in mind, we turn to the facts on which the district court relied in sentencing Mitchell.[19]

First, the record shows that, when he was stopped, Mitchell had been under surveillance for an unrelated drug offense, but that no drugs were recovered from the car he was driving to take the three young children to school. Although the jury in the first trial acquitted Mitchell of possessing the gun in the plastic bag in the same room as the locked box that contained the drugs, the evidence shows that it was his gun and was in close proximity to the drugs on which his "other offense" sentencing enhancement is now predicated. In contrast, there is no evidence that the car had been used to transport those or any drugs to or from the house;

---

[18] Id. (emphasis added). Like the PSR, the sentencing court relied on and applied only the first of § 2K2.1(c)(1)'s two alternative "in connection with" standards.

[19] Inasmuch as the PSR credited by the district court in assessing Mitchell's sentence relied entirely on the first, present tense prong ("possessing a firearm or ammunition in connection with the commission or attempted commission of another offense") and did not address the second, future tense prong ("possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense"), we need not and therefore do not address the second prong, particularly its distinguishing "knowledge or intent" element.

indeed, a police search and a drug dog sniff turned up no sign of drugs in the car, past or present. There is no evidence that the gun had ever been in the house or that Mitchell had any intention of — or reason for — taking it into the house; neither is there evidence of there ever having been either spatial or functional proximity of the gun in the car and the drugs in the house. Nor is there any evidence that Mitchell had any intention of taking the subject drugs from the house to the car.

Moreover, if there is any reasonable inference to be drawn from the possession of any gun "in connection with the commission" of the "other offense," i.e., possession of the narcotics in the locked box inside the house, that inference must be drawn relative to Mitchell's own gun which was found in the plastic bag, alongside the locked box. The presence of that gun inside the house, in immediate proximity to the locked box, begs the question, "Why would Mitchell use or possess, or intend to use or possess, Berry's gun — located as it was outside the house, under the car seat — in connection with possession of the drugs in the locked box inside the house when Mitchell's own gun was right there?" Again, the only scintilla of evidence purporting to link Mitchell's constructive possession of the gun in the car to the drugs he constructively possessed in the box inside the house is Mitchell's coincidental possession of keys to the box and the car keys at the time he was stopped while driving the car — the proverbial reed too slender.

These are the discrete facts found by the district court in connection with Mitchell's sentencing. A factual finding is not clearly erroneous if it is "plausible in the light of the record as a whole."[20] A sentencing court may consider "any information which has sufficient indicia of reliability to support its probable accuracy."[21] The PSR is considered reliable evidence for sentencing purposes.[22] If the defendant does not submit affidavits or other evidence to rebut the information in the PSR, the district court may adopt its findings without further inquiry or explanation.[23]

But, Mitchell is not contesting the discrete facts in the PSR that were relied by the sentencing court, i.e., the location of the drugs, the location of the locked box, the location of his gun in the house (for possession of which he was acquitted in the first trial), the ownership and location of the car he was driving when stopped, the ownership and location of the gun in the car (for possession of which Mitchell was convicted in the second trial), his residing in the house of another with his girlfriend, or his possession of a key chain on which there were two keys to the locked box and a key to the car. What Mitchell is contesting is the conclusion drawn by the sentencing court on the basis of these particular facts regarding the nexus between the possession of the

---

[20] Edwards, 65 F.3d at 432.

[21] United States v. Vital, 68 F.3d 114, 120 (5th Cir. 1995)(quotation and citation omitted).

[22] Id.

[23] Id.

13

gun in the car and the "commission or attempted commission" of another offense —— again, an offense not charged in this case and not an offense for which Mitchell had been convicted —— involving the narcotics in the locked box back at the house.[24]

The facts we considered in United States v. Condren well illustrate the points that distinguish it from the instant case.[25] There, Condren's home was searched pursuant to a warrant obtained after he had sold crack cocaine to an undercover officer. The search revealed a loaded firearm in a desk drawer and a small amount of cocaine base and marijuana seed lying on the top of the same desk.[26] Also, at issue in Condren was Guideline § 2K2.1(b)(5), not § 2K2.1(c)(1), with which we deal today. Still, Condren's discussion of the provision of the former subsection presents a "useful, if imperfect, standard for comparison,"[27] as both of those

---

[24] Although the conclusion that the district court drew on the basis of these discrete facts would appear to be a legal one, or at least a mixed question of fact and law, we are bound by the precedent of our decisions, see, e.q., United States v. Condren, 18 F.3d 1190 (5th Cir. 1994), to treat the district court's determination of the relationship between the firearm and another offense as a factual finding and review that determination for clear error rather than de novo. See id. at 1199-2000. Even so, when we apply that standard we are left with the distinct impression that the district court's nexus determination in this case is not plausible in light of the record and is thus clearly erroneous.

[25] 118 F.3d 1190 (5th Cir. 1994).

[26] Id. at 1191-94.

[27] Id. at 1197; see also United States v. Nale, 101 F.3d 1000, 1003 (4th Cir. 1996)(relying on cases interpreting § 2K2.1(b)(5) to aid in interpreting § 2K2.1(c)'s "in connection with" language).

14

subsections require an in-context construction of the phrase "in connection with."[28]

In Condren, the government urged us to apply the phrase "in connection with" in a straightforward and literal fashion, referring to the connection required between the firearm and the other offense as "nexus."[29] The government argued that we should find the existence of such link or connection there "because both the gun and the drugs were in Condren's possession at the same time and in close proximity to one another."[30] Our panel in Condren then elucidated the findings of fact that bore on the required connection: (1) The firearm was found in precisely the same location "where drugs or drug paraphernalia [w]ere stored or where part of the drug transaction occurred";[31] (2) the gun was "in close

---

[28]  "Hence, we turn to the issue before us: the relationship that must exist between firearm possession and the other [offense]; specifically, the construction to be given 'in connection with'."  Condren, 18 F.3d at 1195.

[29]  Id. at 1196 n.18.

[30]  Id. at 1196 (emphasis added); but see United States v. Thompson, 32 F.3d 1, 8 (4th Cir. 1994)(suggesting that physical proximity is not required).  Although we agree that such proximity is not an indispensable element of "connection" it is certainly an important consideration; the greater the physical separation, the greater the attenuation, and thus the greater the government's hurdle to reach nexus.  In fact, a thorough review of our cases in which the needed "connection" has been found to exist reveals that close physical proximity was found and relied on.  See, e.g., United States v. Hernandez (unpublished by precedential), No. 91-8249 (5th Cir. Feb. 26, 1992)(finding presence of gun and marijuana in same room); United States v. Richardson, 87 F.3d 706, 709 n.4 (5th Cir. 1996)(gun seized by agents while investigating drug trafficking in residence); United States v. Gonzales, 996 F.2d 88, 92 n.6 (5th Cir. 1993)(illegally acquired guns present in car during kidnapping).

[31]  Condren, 18 F.3d at 1199.

15

physical proximity to the narcotics...in a drawer of the very desk where the drugs were found";[32] the gun was fully loaded;[33] and "it was readily available to [Condren] to protect his drug-related activities."[34]

The facts that in Condren we considered significant to the "connection" element for purposes of Guideline § 2K2.1(b)(5) are palpably different from those we consider today in reviewing the sentencing court's determination of nexus between the gun possessed in the car and the "other offense" of drug possession in the house for purposes of Guideline § 2K2.1(c)(1): The handgun of conviction in Condren was in a drawer of the very same desk where the narcotics were located, whereas geographically, spatially, and functionally, the gun of conviction in the instant case was remote from the crack cocaine in the locked box inside the house; and, significantly, another gun — one concededly belonging to Mitchell — was in immediate proximity of the drugs and thus available to protect the crack, the trafficker, and the trafficking operations — in essence, an intervening firearm that further attenuates the functional nexus between the gun under the seat of the car and the contraband in the house. Unlike the firearm in Condren, the gun in the car driven by Mitchell was never "readily available" to Mitchell to protect his drugs or his drug-related activities.

---

[32] Id. at 1200 (quotation and citation omitted).

[33] Id.

[34] Id.

Indeed, the <u>only</u> factual similarity of these two cases is that both guns of conviction were loaded!

In addition to the foregoing factual distinctions between Mitchell's case and Condren's, and the legal distinction that in <u>Condren</u> we were reviewing the application of Guideline § 2K2.1(<u>b</u>)(<u>5</u>) but Mitchell's turns on §2K2.1(<u>c</u>)(<u>1</u>), there is yet another significant difference — noted in dicta in <u>Condren</u> — that further calls into question the propriety of applying the latter Guideline subsection in this case. Unlike the Guideline provision applied in <u>Condren</u>, the "connection" required for applicability of Guideline § 2K2.1(c)(1) is with the <u>commission </u>of another offense. We agree with the dicta in the <u>Condren</u> opinion — and adopt it by reference as part of our holding today — that § 2K2.1(c)'s requirement that the firearm be possessed in connection with the <u>commission</u> of another offense "<u>mandate[s] a closer relationship between the firearm and the other offense than that required for §</u> <u>2K2.1(b)(5) purposes</u>."[35] This is what we refer to as the <u>functional</u> nexus required by § 2K2.1(c).[36] Here, the gun under the car seat was at least as attenuated functionally as it was physically from the drugs in the locked box and Mitchell's constructive possession of those drugs.

_____

[35]  <u>Id</u>. at 1197 (emphasis added).

[36]  <u>See</u>, <u>e.g.</u>, <u>Richardson</u>, 87 F.3d at 709 (noting in dicta that "[i]f the gun was present to facilitate the drug trafficking activities that were occurring at the resident [sic], that conduct could have been sanctioned by applying...§ 2K2.1(c).").

17

Even though we remain mindful of the concerns in all responsible quarters — Congress, the Sentencing Commission, law enforcement, and the courts — about drug trafficking and firearms, and fully agree with those who repeat the truism that guns are the tools of the trade in the illicit drug industry, we do not discern that (1) Congress, in enacting firearms legislation, (2) the Sentencing Commission, in drafting firearms guidelines, or (3) the courts, in interpreting both, have gone so far as to create or recognize an ipso facto nexus rule between firearms and illicit drugs every time a defendant who is convicted of the abuse of one has some relationship with the other, no matter how attenuated. In other words, there is no conclusive presumption, either statutory or jurisprudential, that a "connection" exists automatically between drugs and guns — certainly not in Guideline § 2K2.1(c)(1), given its express requirement of a connection between possession of the firearm and commission or attempted commission of another offense.[37] We are left, therefore, with the distinct impression that the constructive possession of the gun under the car seat by virtue of Mitchell's driving the car while he was taking the three children to school, was too geographically, spatially, functionally, and logically remote from his possession of crack cocaine (which, for purposes of relevant conduct — not conviction — Mitchell constructively possessed by virtue of those drugs being located in the locked box inside the house where he and his girlfriend were residing) to satisfy the requirement of a

---

[37]    See supra n.19.

18

cognizable linkage between possession of the gun and "commission or attempted commission of another offense."  Cumulatively, the two are simply too attenuated to permit nexus!  Specifically, the mere coincidence of keys to the locked box and to the car on Mitchell's key ring is too minimal to bridge the attenuated nexus gap, particularly when viewed in light of the presence of an intervening firearm, owned by Mitchell, in much closer proximity to the drugs than was the gun of conviction.  In essence, under the particular facts of this case, the chasm of nexus between the gun and the drugs requires a leap of legal logic too great to make the required connection.  We are constrained to conclude that the sentencing court's finding of the required connection was clearly erroneous.

### III.
### CONCLUSION

For the reasons set forth in section II B. of this opinion, we affirm Mitchell's conviction, notwithstanding the remarks made to the jury by the district court in response to the question propounded to the court during the course of jury deliberations. But, for the reasons set forth in section II C. above, regarding Mitchell's sentence —— specifically, the application of Guideline § 2K2.1(c) —— we discern a clear error in the finding of the required connection between Mitchell's possession of the firearm in the car and his possession of the drugs in the locked box back in the house.  As the offense level produced was such that a significant difference in Mitchell's sentencing range resulted, the error cannot be considered harmless.  These conclusions, in turn, leave us no choice but to vacate Mitchell's sentence and remand the

19

case to the district court for resentencing in a manner consistent with this opinion.

Conviction AFFIRMED; Sentence VACATED; and Case REMANDED for resentencing.