IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-30614
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES KEVIN HODGES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(98-CR-30003-ALL)

_____

July 20, 1999

Before POLITZ, JOLLY, and DUHÉ, Circuit Judges.

PER CURIAM:[*]

In this criminal appeal, the appellant, Kevin James Hodges, challenges the district court's calculation of his sentence under the United States Sentencing Guidelines. Hodges was sentenced to 63 months of imprisonment for one count of possession of firearms by a convicted felon. For the following reasons, we affirm.

I

A

On August 18, 1997, James Kelvin Hodges was transferred to the City of Faith Community Corrections Center in Monroe, Louisiana.[1]

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]On March 27, 1996, Hodges pleaded guilty to assault in

As a condition of his confinement, Hodges was permitted to leave the facility during the day. He could also maintain employment. On December 20, 1997, Hodges failed to return to the Corrections Center. The Bureau of Prisons placed him on "escape status."

On December 31, 1997, the local police of Ennis, Texas, spotted Hodges in an area of the city known for drug trafficking. When the police approached Hodges's vehicle he attempted to flee the scene. A twenty-mile, high-speed chase ensued. Hodges was apprehended after the authorities used road spikes to deflate his tires.

Shortly before his December 20, 1997 escape from the Corrections Center, Hodges made several unlawful firearm transactions. On December 9, 1997, Hodges sold a Marlin, Model 60.22 caliber rifle and an Ithaca 12 gauge pump shotgun to a Monroe pawnshop. Mark Hodges, the defendant's brother, had previously reported the firearms stolen. On December 15, 1997, Hodges sold a Hawkin .54 muzzle loader, a Browning 12 gauge shotgun, and a Marlin .30-.30 lever action rifle to three of his co-workers. Samuel Hodges, the defendant's cousin, reported these weapons stolen from his home in Rosefield, Louisiana.

B

violation of 18 U.S.C. § 113(a). He was sentenced to 27 months imprisonment and fined $10,000.00.

2

On January 29, 1998, Hodges was indicted on one count of unlawful escape from the custody of the Attorney General[2] and one count of possession of firearms by a convicted felon,[3] specifically, the Marlin 60.22 rifle and the Ithaca pump shotgun. Hodges entered into a plea agreement, and the government dismissed the escape charge. Hodges pleaded guilty to the possession count, and on June 2, 1998, the district court sentenced him to 63 months of imprisonment for the crime. In calculating Hodges's sentence, the district court initially increased Hodges's base offense level by two under U.S.S.G. § 2K2.1(b)(1)(B) (1997), based on his possession of the five firearms: the Marlin 60.22 rifle; the Ithaca shotgun; the Browning shotgun; the Marlin .30-.30 rifle; and the Hawkin .54 muzzle loader. At the presentence hearing, Hodges objected to the district court's application of the two-level enhancement, on the grounds that the Hawkin .54 muzzle loader was an antique replica and that it was not unlawful for a convicted felon to possess the weapon. The district court agreed and consequently added a one-level enhancement to Hodges's base offense level under U.S.S.G. § 2K2.1(b)(1)(A) (1997), based on his possession of the remaining four firearms only. Next, the district court added a two-level enhancement to Hodges's offense level under U.S.S.G. 2K2.1(b)(4) (1997) because the firearms were stolen.

_____

[2] 18 U.S.C. § 751(a).

[3] 18 U.S.C. § (g)(1).

Finally, the district court increased Hodges's offense level by two under U.S.S.G. § 3C1.2 (1997), based on his reckless conduct during his flight from the Ennis, Texas police. Hodges timely appealed the sentence.

## II

## A

Hodges first argues that the district court erred in increasing his base offense level by one under § 2K2.1(b)(1)(A), based on his possession of four firearms. Hodges contends that application of the enhancement was improper because he pleaded guilty to only possessing the Marlin 60.22 rifle and the Ithaca shotgun, and, thus, his possession of the Browning shotgun and the Marlin .30-.30 rifle six days after the charged offense does not constitute "relevant conduct." Second, Hodges complains that the district court's application of the two-level enhancement under U.S.S.G. 2K2.1(b)(4) is improper because he had no knowledge that the firearms underlying his § 922(g)(1) convictions were stolen. Finally, Hodges contends that the district court erred in applying the two-level enhancement under U.S.S.G. § 3C1.2, as there exists no nexus between his crimes of conviction and his flight from law enforcement. Hodges argues that the police pursued him only because they suspected that he had engaged in an illegal drug transaction.

## B

4

This court accords great deference to the district court's application of the sentencing guidelines. <u>United States v. Condren</u>, 18 F.3d 1190, 1193 (5th Cir.), <u>cert. denied</u>, 513 U.S. 856 (1994). We review the district court's application of the sentencing guidelines <u>de novo</u>, and its factual findings for clear error. <u>United States v. Mitchell</u>, 166 F.3d 748, 751 (5th Cir. 1999). We find no error in the district court's calculation of Hodges's sentences.

First, for the purposes of calculating Hodges's base offense level under U.S.S.G. § 2K2.1(b)(1)(a), it is of no legal consequence that Hodges did not plead guilty to the possession of the Browning shotgun and the Marlin .30-.30 rifle. U.S.S.G. § 2K2.1(b)(1)(a) instructs that if the offense involved three to four firearms, increase by one level. In applying the guideline, the district court concluded that Hodges's possession of the Marlin 60.22 rifle and the Ithaca shotgun was part of the offense of conviction, while his possession of the Browning shotgun and the Marlin .30-.30 rifle six days later constituted "relevant conduct." We have previously held that the district court is permitted to consider non-adjudicated offenses (offenses for which the defendant has neither been charged nor convicted) that occur after the offense of conviction, provided they constitute "relevant conduct" under U.S.S.G. § 1B1.3. <u>United States v. Vital</u>, 68 F.3d 114, 118 (5th Cir. 1995). "Relevant conduct" has been defined to include those offenses that are "part of the same course of conduct or

5

common scheme or plan as the offense of conviction." Id.; U.S.S.G. § 1B1.3(a)(2). The commentary to U.S.S.G. § 1B1.3(a)(2) further provides that "offenses qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single criminal episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3(a)(2), comment. (n.9(B)). The determining factors are the degree of similarity between the offenses, the regularity of the offenses, and time interval between the offenses. Id. Applying these standards, the record shows that Hodges possessed and sold the Marlin 60.22 rifle and the Ithaca shotgun on December 9, 1997, and the Browning shotgun and the Marlin .30-.30 rifle on December 15, 1997. Each of the four firearms had been stolen from Hodges's relatives and sold to unwitting buyers. The district court concluded that Hodges acquired and sold the four firearms days prior to his December 20, 1997 escape from the Corrections Center in preparation for his disappearance. In the light of this record, we agree that Hodges's possession of the Browning shotgun and the Marlin .30-.30 rifle was sufficiently similar and closely related in time to the offense of conviction so as to constitute relevant conduct.

With respect to Hodges's second attack on his sentence, the commentary to U.S.S.G. § 2K2.1(b)(4) makes clear that "the two-level enhancement under U.S.S.G. § 2K2.1(b)(4) applies whether or not the defendant knew or had reason to believe that the firearm

6

was stolen."[4] U.S.S.G. § 2K2.1(b)(4), comment. (n.19). (Emphasis added). See also United States v. Fry, 51 F.3d 543, 546 (5th Cir. 1995) (citing United States v. Singleton, 946 F.2d 23 (5th Cir.), cert. denied, 502 U.S. 1117 (1992)).

Finally, in response to Hodges's third challenge to his sentence, the plain language of U.S.S.G. § 3C1.2 seems not to require a direct nexus between the crime of conviction and the defendant's acts of reckless endangerment.[5] Nor can we glean from a literal reading of the guideline's commentary the sentencing commission's intent to limit application of the enhancement in such a manner. Cf. U.S.S.G. § 3C1.2, comment. (n.3) (noting "during flight" is to be construed broadly). Even if we assume, as did the Ninth Circuit, that U.S.S.G. § 3C1.2 requires a nexus between the crime of conviction and the defendant's reckless conduct, United States v. Duran, 37 F.3d 557, 559-60 (9th Cir. 1994), we find that a sufficient nexus exists on the record before us. Hodges had escaped recently from the Corrections Center, where he had knowingly and illegally possessed and sold firearms only a few

---

[4]Commentary to the sentencing guidelines is accorded the same weight as legislative rules adopted by federal agencies. United States v. Powell, 124 F.3d 655, 665 (5th Cir.), cert. denied, 118 S.Ct. 1082 (1998).

[5]U.S.S.G. § 3C1.2 provides "if the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels."

7

weeks earlier, probably to finance his escape.  He was evading the authorities in connection with these crimes when the high-speed chase began.  That this chase--and hence Hodges's acts of reckless endangerment--occurred so that he could avoid apprehension for the firearm offenses is clearly convincing in the light of the record as a whole.  The dispositive factor here is the defendant's state of mind, not the police's motives for pursuing him.  See id. at 560.

In sum, we find no error in the district court's application of the sentencing guidelines.  We therefore affirm the judgment of sentence imposed by the district court.

A F F I R M E D.