**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 97-30519
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD EARL JOHNSON; RICKY PHILLIP;
NORWOOD JOSEPH JOHNSON,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(96-CR-60031)
_____

August 6, 1999

Before JONES, WIENER, Circuit Judges, and LITTLE,[*] District Judge.

PER CURIAM:[**]

This appeal arises from the prosecution of three members of a drug conspiracy who were found to have trafficked crack cocaine from Houston, Texas to various areas in Louisiana and Texas. Defendants-Appellants, Richard Earl Johnson ("R.E. Johnson"), Ricky Phillip ("Phillip"), and Norwood Joseph Johnson ("N.J. Johnson"), were charged with 11 other defendants in a 23-count indictment consisting of one count of conspiracy to engage in narcotics

[*]District Judge of the Western District of Louisiana, sitting by designation.

[**]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

offenses and various counts of substantive narcotics offenses.  In a consolidated trial of these three defendants, the jury found each guilty of different counts under the indictment. On appeal, each defendant raises separate challenges to the district court proceedings, implicating sufficiency and admissibility of evidence, as well as juror misconduct.  Concluding that the district court acted well within its discretion and that the jury verdicts were not against the weight of the evidence, we affirm.

**I.**

**FACTS AND PROCEEDINGS**

The facts of this case span seven years and involve countless incidents of manufacturing, transporting, and distributing crack cocaine.  As each defendant played a different role in the criminal enterprise and each challenges different aspects of the district court's conduct of the trial, we present separately the facts and analysis pertinent to each defendant's appeal.

A.    <u>Norwood Joseph Johnson</u>

1.    <u>Factual Background</u>

As the leader of the drug conspiracy, N.J. Johnson was named in 17 of the indictment's 23 counts, including conspiracy to possess and distribute cocaine base in violation of 21 U.S.C. § 846 (count 1), possession with intent to distribute cocaine base on February 4, 1995 in violation of 21 U.S.C. § 841(a)(1) (count 19),

carrying a firearm during and in relation to a drug crime in violation of 18 U.S.C. § 924(c)(1) (count 20), and assuming a leadership role in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (count 22). On appeal, N.J. Johnson challenges the sufficiency of the evidence to convict him of count 20, carrying a firearm "during and in relation to" a drug trafficking offense.

The specific drug trafficking offense referred to in count 20 took place on February 4, 1995. Appellant N.J. Johnson and his wife traveled in a Chevrolet Impala from Houston to a hotel in Lafayette where, according to plan, they met three co-conspirators to conduct a drug transaction. These three co-conspirators were also traveling from Houston, allegedly carrying over 37 ounces of crack cocaine hidden in the door panel of their Crown Victoria. Having been "tipped off" about this meeting, federal agents set up surveillance in the hotel and its parking lot. The agents observed the arrival and departure of different co-conspirators, including N.J. Johnson and his wife, but did not witness the actual exchange of drugs and money.

Later that afternoon, when the Johnsons left the hotel in their Impala, Lafayette police pulled them over for an improper lane change. The officers conducted a lawful search of the vehicle and recovered a 9mm semiautomatic pistol. The officers testified that, on careful scrutiny of the vehicle, they determined that the plastic fasteners and metal screws securing the door panels were marred and loose, indicative of frequent removal in the past. This evidence, noted the officers, was consistent with the fact that the

Johnsons drove a Chevrolet Impala, which is known as a high performance vehicle having very large natural cavities for hiding drug contraband.

Later that evening, the Lafayette police stopped the other co-conspirators' Crown Vic, and from the officers' lawful search of that vehicle, marijuana residue and $12,000 in cash were recovered. Federal agents also searched the then-empty hotel rooms in which the drug transaction had transpired and found, among other things, shredded paper, marijuana, cocaine residue, and duct tape.

During trial, Mrs. Johnson testified that she had purchased the pistol recovered from their Impala by the police on February 4 for personal protection at home. She explained that, at the request of her husband, she had purchased two firearms, one of which was the 9mm pistol taken with them to Lafayette and later recovered from the Impala by the Lafayette police, and the other of which was seized that day from Mrs. Johnson's brother.[1] She further testified that this was the first time they had taken any gun with them while traveling in the car. In contrast to his wife's testimony, N.J. Johnson stated that the couple always carried a gun when traveling by car. Based inter alia on this conflicting testimony, the jury convicted N.J. Johnson of carrying a firearm during and in relation to a drug trafficking offense.

2.   Sufficiency of the evidence: § 924(c)(1)

---

[1]Mrs. Johnson's brother was not involved in this particular drug transaction, but had been arrested on the same day in Mt. Vernon, Alabama while in possession of 6 grams of crack and a 9mm semiautomatic pistol.

**4**

N.J. Johnson argues that the evidence adduced at trial was insufficient to support his conviction of carrying a firearm during and in relation to a drug trafficking crime. We review the evidence in a light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] Regardless of whether the evidence presented is direct or circumstantial, we must accept all reasonable inferences and credibility choices that support the jury's verdict.[3]

Section 924(c)(1) criminalizes the use or carrying of a firearm "during and in relation to any crime of violence or drug trafficking crime."[4] In this circuit, transporting a firearm in an automobile constitutes "carrying," regardless of the specific location of the gun in the vehicle.[5] It is undisputed that the police discovered the 9mm pistol in the automobile driven by N.J. Johnson; it was therefore "carried" for purposes of section 924(c)(1).

The thrust of N.J. Johnson's argument is that, even if he "carried" the gun, he did not do so "during and in relation to" a

---

[2]Jackson v. Virginia, 443 U.S. 307, 324 (1979); United States v. Greenwood, 974 F.2d 1449, 1456 (5th Cir. 1992), cert. denied, 113 S. Ct. 2354 (1993).

[3]United States v. Gonzales, 866 F.2d 781 (5th Cir.), cert. denied, 490 U.S. 1093 (1989); Greenwood, 974 F.2d at 1458 ("Assessing the credibility of witnesses and weighing the evidence is the exclusive province of the jury.").

[4]11 U.S.C. § 924(c)(1) (1994).

[5]United States v. Brown, 161 F.3d 256, 258 (5th Cir. 1998); United States v. Harlan, 130 F.3d 1152, 1153 (5th Cir. 1997).

drug trafficking offense on February 4, 1995.[6]  He correctly contends that the mere possession of a gun in the proximity of the crime is insufficient to show that the gun was related to the underlying drug offense.[7]  He claims that the only connection between the car and the drug offense was that the car containing the gun had been driven to and from the site of the drug transaction.  As no drugs were found in the car, and at no time did the pistol facilitate the drug transaction, argues N.J. Johnson, the carrying of the pistol did not occur "during and in relation to" the offense.

We agree that the mere possession of a gun in the proximity of the crime is not enough to support a conviction under section 924(c)(1).  We note, however, that the gun need not be in the immediate vicinity of the drugs to satisfy the statute, either.[8]  In fact, to satisfy the statute, the firearm need only "have the potential of facilitating the underlying drug trafficking

---

[6]Regardless of whether the pistol was carried "during and in relation to" the singular drug offense committed on February 4, it was clearly carried "during and in relation to" the entire drug trafficking conspiracy.  Even though Appellant was not ultimately convicted of conspiracy, as it is a lesser included offense of a continuing criminal enterprise, the jury's finding that Appellant engaged in the conspiracy is sufficient to establish a predicate offense.  See United States v. Thomas, 12 F.3d 1350, 1362-63 (5th Cir. 1994).

[7]See Smith v. United States, 508 U.S. 223, 238 (1993) ("The phrase 'in relation to' thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence.").

[8]See United States v. Tolliver, 116 F.3d 120, 126 n.6 (5th Cir.), cert. denied, 118 S. Ct. 324 (1997).

offense."[9]  To determine whether the pistol had this potential, we must consider the entire voyage embarked on by the Johnsons and the three co-conspirators, rather than taking a snapshot view of only the short time in which the drugs physically changed hands inside the hotel.

When the Johnsons and the three co-conspirators left Houston in two separate cars, they planned to meet at a pre-determined hotel where they believed their activities would be undetected.  It would be reasonable for a jury to infer that, as the kingpin of the conspiracy, N.J. Johnson took care not to travel with the drugs or the resulting proceeds in the car he was occupying.  This inference is supported by the testimonial evidence of the co-conspirators who transported the drugs to Lafayette and left with the resulting proceeds.  Even though the pistol remained in N.J. Johnson's car, it was available to him or his passenger at any time in the event of trouble with any of the co-conspirators or unexpected authorities.

In fact, Mrs. Johnson testified, in direct contradiction to her husband, that this was the only time the couple had carried the pistol with them in the car.  She further testified that, at her husband's request, she had recently purchased two firearms, one of which was the pistol seized in their car by the Lafayette police. The proximity of this purchase to the drug transaction raises an additional inference that it was purchased to carry along with the Johnsons on this drug transaction.  Finally, the pistol was found

[9]Id. at 126.

**7**

in the middle console of the car and was easily accessible to N.J. Johnson and his wife in the event the drug transaction went awry. Viewing the drug transaction from portal to portal, i.e. from Houston to Lafayette and back, we conclude that a reasonable jury could infer that the pistol was used "during and in relation to" the drug trafficking offense that took place on February 4.

B.   Ricky Phillip

   1.   Factual Background

Phillip allegedly supplied cocaine to N.J. Johnson.  He was indicted under count 1 for conspiracy to possess with intent to distribute cocaine.  Phillip challenges the sufficiency of the evidence to convict him of conspiracy and further argues that the jury's use of extrinsic evidence during the trial affected the verdict and resulted in prejudice against him, mandating a new trial.

During trial, the government called eight co-conspirators who had previously pled guilty but had yet to be sentenced, to testify against Phillip.[10]   These eight witnesses, each of whom were involved in different aspects of the cocaine trafficking operation, identified Phillip but knew him only as "Rick" or "Slick Rick," absent any surname.   Most of the eight testified that "Rick"

---

[10]The witnesses included (1) Reginald Bernard, N.J. Johnson's right-hand man; (2) Ernest Lowery, who was involved in "cooking" the cocaine into crack and transporting the crack; (3) Shannon Martin, N.J. Johnson's prior girlfriend who rented apartments for N.J. Johnson and participated in transporting crack; (4) Douglas Green, N.J. Johnson's gopher and bodyguard; (5) Mrs. Johnson, N.J.'s wife; (6) Gregory Hancock, who transported crack; (7) Dion Eaglin, who transported crack, and (8) Suzanne Moses Grueso, who supplied N.J. Johnson with cocaine.

supplied cocaine to N.J. Johnson.  Although some of them observed the drugs change hands, others had never seen an actual transaction.

On his behalf, Phillip called his wife and his parents, who testified that he maintained a full-time job at Brown & Root and never possessed more than $30 or $40 in cash at any time. Additionally, the testimony of each family member addressed Phillip's living arrangements.  At some point during the four years of his alleged involvement in the drug conspiracy, Phillip resided in an apartment complex that was gated and protected by a full-time security guard, facts not recalled by any witness who claimed to have met Phillip at his apartment.  Even though the evidence was conflicting, the jury convicted Phillip of conspiracy to distribute cocaine in violation of 21 U.S.C. § § 841(b)(1)(A) and 846.

At the end of trial but immediately before deliberations, Phillip moved for a mistrial based on the discovery that jurors had been using extraneous documents not placed into evidence during the pendency of trial.  A court security officer had discovered maps of Houston and Lafayette while he was clearing out the jury deliberation room prior to formal deliberations.  On learning of the maps' removal from the room, the jury had made it clear that they wanted to use the maps during their deliberations.

Defendants' counsel would not agree to allow the jury to use the maps during deliberations, and, instead, moved for a mistrial. In connection with the denial of the mistrial motions, the court admonished the jury members for their actions and instructed the

sole juror who had attempted to locate particular addresses on the maps to disregard anything he had learned from the maps. Ultimately, the court concluded that the jurors' consideration of two maps had not prejudiced any defendant. In passing, the court noted that the maps could have been properly authenticated and offered into evidence had either party so desired.

2.   Sufficiency of the evidence: Conspiracy

Phillip challenges the sufficiency of the evidence to support his conspiracy conviction. We review this issue exactly as we did regarding N.J. Johnson: There must be evidence from which a jury could find each element of the offense charged beyond a reasonable doubt.[11]

To gain a conviction of conspiracy under 21 U.S.C § 841(a)(1) and 846, the government had to prove that: (1) an agreement existed between two or more persons to violate narcotics laws; (2) the defendant knew of the conspiracy; and (3) the defendant participated in the conspiracy.[12]  A person may be guilty as a co-conspirator even if he plays only a minor role, but mere association with other persons involved in a criminal enterprise is insufficient to prove participation in a conspiracy.[13] Proof of the existence of the predicate agreement, however, may be tacit and inferred from circumstantial evidence.[14]

---

[11]Jackson, 443 U.S. at 307.

[12]United States v. Asibor, 109 F.3d 1023, 1030 (5th Cir. 1997).

[13]Greenwood, 974 F.2d at 1457.

[14]Thomas, 12 F.3d at 1356-57.

**10**

Even though we discern minor variations in witness testimony, we must defer to the trier of fact for determinations of credibility. The government presented evidence, through eight witnesses, that Phillip supplied the cocaine, was aware that it was "cooked" into crack, and knew that it was distributed throughout Texas and Louisiana. Additional evidence showed that Phillip met with N.J. Johnson and provided him with cocaine base. Although Phillip's wife, mother, and father protested that they knew nothing of his alleged drug dealing, the jury was entitled to discount this testimony and credit the government's witnesses. The testimony in the record supports the jury's determination that Phillip's activities constituted conspiracy to possess with the intent to distribute cocaine.

3.   Juror impropriety: Extrinsic evidence in jury room

Next, Phillip argues that he is entitled to a new trial because the jury's consideration of the maps of Houston and Lafayette, which had not been admitted into evidence, resulted in undue prejudice against him. We review a denial of a motion for a mistrial for abuse of discretion.[15]

During trial, the jury is allowed to consider only evidence that is offered by either party and deemed admissible by the court. When the presence of extrinsic material in the jury room constitutes error, such error can be harmless if it "did not create any reasonable possibility of prejudice."[16] If, however, there is

_____

[15]United States v. Mitchell, 166 F.3d 748, 751 (5th Cir. 1999).

[16]Llewellyn v. Stynchcombe, 609 F.2d 194, 195 (5th Cir. 1980).

a reasonable possibility that consideration of the extrinsic material had a prejudicial effect on the jury's verdict, a defendant is entitled to a new trial.[17]

Phillip contends that the map of Houston had been used by the jury as further "evidence" to support the testimony of government witnesses as to the location of his apartment. Without this evidence, Phillip claims, the jury could have inferred that the co-conspirators identified him to gain favor with the government. We find Phillip's argument unavailing. Location was not a vital issue at this trial, as reflected by the vague testimony of witnesses concerning the places where Phillip allegedly delivered cocaine. The prosecution's evidence focused on the activities and persons involved in the drug transaction, rather than on specific locations. Additionally, if the location of Phillip's apartment had the potential to affect the verdict, either side could have entered the maps into evidence at trial.[18] Moreover, on learning that the jury had studied the maps, the court instructed the jurors to disregard any information they had gleaned from that examination, and the jury is presumed to follow curative instructions. We therefore conclude that the trial court did not abuse its discretion when it held that there was no reasonable

---

[17]United States v. Ruggiero, 56 F.3d 647, 652 (5th Cir. 1995), cert. denied, 516 U.S. 979 (1995).

[18]The district judge correctly commented, "I really believe those maps could have been authenticated and sent to the jury if anybody would have wanted it."

possibility that the jury's consideration of the maps had a prejudicial effect on the verdict against Phillip.

C.    Richard Earl Johnson

    1.    Factual Background

    R.E. Johnson is the brother of N.J. Johnson.  He was indicted on counts 6 and 9 for possession with the intent to distribute crack cocaine.  R.E. Johnson argues that the court abused its discretion in admitting Rule 404(b) evidence, under the Federal Rules of Evidence ("FRE"), of his involvement in extrinsic drug offenses, specifically this conspiracy, of which he had previously been acquitted.[19]  He claims that the government used inadmissible character evidence of his involvement in prior drug activities to prove that he had a propensity to act in conformity therewith.

    The drug transaction indicted as count 6 allegedly took place in May of 1993.  Ernest Lowery, a drug runner for N.J. Johnson, testified that he believed crack cocaine was cooked at R.E. Johnson's apartment, although he was unable to describe the interior of the apartment.  Lowery further testified that when he arrived at the apartment, everyone, including R.E. Johnson, left the building while he and N.J. Johnson cooked the cocaine.  The jury acquitted R.E. Johnson on count 6.

---

    [19]R.E. Johnson had been indicted, tried, and acquitted in the Eastern District of Louisiana on a conspiracy charge arising from the same incidents alleged in count 1 of the instant indictment. Although the government has collected extensive evidence supporting the conspiracy, Defendant is protected from prosecution for conspiracy on double jeopardy grounds.  Defendant remains an acquitted co-conspirator and was only charged in this indictment with two substantive drug offenses.

The activities underlying count 9 are alleged to have occurred in August of 1993. Lowery testified that he and R.E. Johnson traveled from Houston to Lafayette on a Greyhound bus and stayed in a Travelodge hotel. According to Lowery, R.E. Johnson was carrying approximately 18 ounces of cocaine. Reginald Bernard, N.J. Johnson's right-hand man, testified that he picked up Lowery and R.E. Johnson at the bus station and took them to the Travelodge, where there are records of Bernard's stay and of a phone call made to a number associated with N.J. Johnson. The jury found R.E. Johnson guilty of count 9.

At trial, the prosecution presented additional "other crimes" evidence pursuant to FRE 404(b) to demonstrate R.E. Johnson's state of mind at the time he participated in the offenses for which he was charged. Seven witnesses testified against R.E. Johnson and provided numerous accounts of drug transporting, cooking, and distributing in which he was involved. He specifically complains of testimony regarding an incident involving federal agents who stopped a truck in which he was allegedly traveling with two other persons. In the truck, the agents discovered a bag containing large quantities of cocaine and a handgun. The three suspects were then ordered to get down on the ground, but one of them —— allegedly R.E. Johnson —— ran away and evaded the agents.

Prior to trial, R.E. Johnson filed a motion in limine to exclude the "other crimes" evidence pursuant to Rule 404(b). The district court denied the motion, concluding that (1) the extrinsic evidence is "relevant to the issue of defendant's intent to

**14**

distribute a controlled substance as alleged in Counts Six and Nine," and (2) "the evidence's probative value is not outweighed by undue prejudice."  Over objections at trial, the court admitted testimony of other crimes involving R.E. Johnson, but issued precautionary instructions.  Then, on the fourth day of testimony, the district court ruled that the admission of more 404(b) evidence would unfairly prejudice R.E. Johnson.  Accordingly, the court forbade the government from referencing R.E. Johnson's involvement in other crimes, with the exception of the truck incident when he allegedly evaded the federal agents.

   2.   Admission of evidence: Rule 404(b)

R.E. Johnson challenges the district court's admission of other crimes evidence pursuant to FRE 404(b).  The district court's decision to admit the evidence under FRE 404(b) will not be disturbed absent an abuse of discretion.[20]

R.E. Johnson advances three principal arguments: (1) the government did not provide adequate notice of its intent to elicit 404(b) evidence from Gidget Jolivette, (2) the government invoked no permissible use for the other crimes evidence, and (3) the danger of unfair prejudice substantially outweighed the probative value of this evidence.  FRE 404(b) permits the government to introduce extrinsic offense evidence for the limited purpose of establishing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[21]  If

---

   [20]United States v. Bermea, 30 F.3d 1539, 1561 (5th Cir. 1994).

   [21]FED. R. EVID. 404(b).

**15**

requested, the government is required to give notice "of the general nature of any such evidence it intends to introduce at trial."[22]  Extrinsic evidence is properly admitted under FRE 404(b) if the evidence is relevant to an issue other than defendant's character and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under FRE 403.[23]

R.E. Johnson first insists that the government failed to notify him of other crimes evidence that it intended to elicit from Jolivette.  We find this argument tenuous at best, as the plain language of the rule merely requires the government to provide notice of the "general nature" of any extrinsic evidence that it intends to offer.  In its response to R.J. Johnson's motion in limine, the government explained that the evidence it intended to introduce "relates not only to the defendant's involvement in an incident at the Greyhound Bus Station . . . but other loads of "crack" he transported. . . ."  It was not necessary for the government to identify by name every witness that it believed would substantiate R.E. Johnson's involvement in other crimes.  We therefore reject R.E. Johnson's first challenge under FRE 404(b).

R.E. Johnson next claims that the government advanced no valid need for introduction of other crimes evidence.  The district court concluded, however, that such extrinsic evidence was relevant to

---

[22]Id.

[23]United States v. Chavez, 119 F.3d 342, 346 (5th Cir.) (citing United States v. Beechum, 582 F.2d 898, 911 (5th Cir, 1978)), cert. denied, 118 S. Ct. 615 (1997).

his intent and knowledge to commit the acts described in counts 6 and 9. We agree. We have frequently held that extrinsic drug offense evidence is admissible in drug prosecutions, subject to the limitations of FRE 404(b) and 403.[24] R.E. Johnson was indicted in two substantive offenses of possession with the intent to distribute cocaine, and the government proceeded on the theory that he was both a principal and an "aider and abettor."[25] Evidence of R.E. Johnson's intent to join the enterprise supports a conviction for aiding and abetting the offenses detailed in counts 6 and 9.[26] Additionally, even though in his prior trial R.E. Johnson was acquitted on the charge of conspiracy, extrinsic evidence surrounding that conspiracy is admissible under FRE 404(b) when the prosecution proves the defendant's involvement in the offense by a preponderance of the evidence.[27] This the government did. We therefore conclude that R.E. Johnson's second assignment of error under FRE 404(b) is without merit.

R.E. Johnson claims finally that even if the government's purpose in admitting the evidence was proper, the prejudicial

---

[24]Bermea, 30 F.3d at 1562.

[25]United States v. Dodd, 43 F.3d 759, 763 (1st Cir. 1995) (concluding that the aider and abetter basis for criminal liability is implicit in all indictments for substantive offenses and need not be plead in the indictment); United States v. Bullock, 451 F.2d 884, 888 (5th Cir. 1971) (same).

[26]See United States v. Phillips, 664 F.2d 971 (5th Cir.) (noting that aiding and abetting requires a community of unlawful intent between the principal and the aider and abetter), cert. denied, 457 U.S. 1136 (1981).

[27]Huddleston v. United States, 485 U.S. 681, 687-88 (1988).

**17**

nature of the evidence greatly outweighed its minimal probative value. The district court expressly found, however, that the probative value of the extrinsic evidence was not outweighed by undue prejudice. In fact, the court's continuing sensitivity to maintaining the proper balance between probative value and prejudice was demonstrated when, on the fourth day of trial, the district court prohibited the admission of any additional FRE 404(b) evidence against R.E. Johnson. Presumably the court determined that the probative value of the 404(b) evidence had decreased or the danger of unfair prejudice against him had increased, or both. The district court was well within its discretion in making these determinations under FRE 403, so we reject R.E. Johnson's final argument.[28]

## CONCLUSION

For the reasons expressed above, we affirm the convictions of Norwood Joseph Johnson, Ricky Phillip, and Richard Earl Johnson. AFFIRMED.

---

[28]Even if the FRE 404(b) evidence was admitted in error, that error was harmless. As he himself points out, R.E. Johnson's conviction on count 9 was based solely on the jury's evaluation of the credibility of witnesses who provided an account of the events that transpired at the time of the charged offense. It is axiomatic that determination of witness credibility is the exclusive province of the jury, and we cannot overturn that determination absent clear error. We conclude that the jurors were presented with sufficient, non-404(b) evidence of R.E. Johnson's arrival at the bus station carrying drugs and the distribution of these drugs from a Travelodge hotel room. Any error was therefore harmless.